The UNITED STATES of America, Appellee,

v.

Charles Edward WHITE, Appellant.

No. 957, Docket 76–1511.

United States Court of Appeals, Second Circuit.

Argued March 11, 1977.

Decided April 19, 1977.

Certiorari Denied June 13, 1977. See 97 S.Ct. 2937.

---

Joseph D. Bermingham, Jr., Buffalo, N. Y. (Doyle, Diebold, Bermingham, Gorman & Brown, Buffalo, N. Y., of counsel), for appellant.

Richard E. Mellenger, Asst. U. S. Atty., Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., Buffalo, N. Y., of counsel), for appellee.

Before SMITH and FEINBERG, Circuit Judges, and TENNEY, District Judge.*

FEINBERG, Circuit Judge:

Charles Edward White was convicted after a jury trial in the United States District Court for the Western District of New York, Charles L. Brieant, Jr., J. (sitting by designation), of one count of interstate transportation of two young women, Annette Petty and Michelle Sims, for the purposes of prostitution in violation of the Mann Act, 18 U.S.C. § 2421.[1] Annette Petty was to have been a witness against White, but she was murdered shortly after White was first charged in a criminal complaint. Count I of the ensuing indictment charged the Mann Act violation. Count II charged White with obstruction of justice for the murder of Annette Petty, 18 U.S.C. § 1503. The latter count was dismissed after White was tried and acquitted in a New York state court on the murder charge. In this appeal from the Mann Act conviction, White contends that the court erred in admitting the hearsay statements of Annette Petty and in refusing to poll the

---

* Of the Southern District of New York, sitting by designation.

1. White received a three and one-half year sentence.

jurors on whether they had read a newspaper article about him. For the reasons set forth below, we reject both contentions and affirm the judgment of conviction.

The principal witness against White was Michelle Sims, who testified that in 1974 she was a prostitute and White was her pimp, and that in September of that year, he drove her and Annette Petty from Buffalo, New York, to Erie, Pennsylvania for the purposes of prostitution. This testimony was corroborated by Officer DiPaolo of the Erie Police Department, who arrested the two women for prostitution, and by Alice DuBois, who was White's girlfriend at the time. The only other government witness was FBI agent Lester Skinner, who testified concerning two interviews he conducted with Annette Petty in October 1974, approximately two weeks after her arrest on the prostitution charge and shortly before her murder. In these interviews, one of which was reduced to writing, Petty gave details of the trip to Erie and admitted that the purpose of the trip was prostitution. The district court ruled that the agent's hearsay evidence and a redacted version of the written statement were admissible either under the "against penal interest" exception of Fed.R.Evid. 804(b)(3), or under the "catch-all" exception of Rule 804(b)(5).[2]

## I

The "against penal interest" exception to the hearsay rule, now embodied in Rule 804(b)(3), represents a significant change in federal law, see *United States v. Guillette & Joost,* 547 F.2d 743, 753 (2d Cir. 1976), and the reach of the exception is as yet uncertain. See generally 4 Weinstein's Evidence ¶ 804(b)(3). Here, we are faced with statements by an unavailable declarant in which she admitted that she was a prostitute and stated that defendant was her pimp. Large portions of the written statement were, however, edited by the court, and the version of the statements related to the jury was as follows: First, FBI agent Skinner testified that Petty, in her oral statement of October 1, 1974, admitted that she was a prostitute.[3] Second, Skinner paraphrased for the jury Petty's written statement of October 7, as redacted by the trial judge. In the unedited statement, Petty said, among other things, that White beat her "in order to get me to prostitute myself for him," that he gave her drugs, that she saw Michelle Sims give him $15 after her arrest, which she said was all that Sims had made that day, and that she and Sims, when they had been unable to "turn any tricks," robbed for White. All of this was edited from the statement as read to the jury, as were all characterizations of the

**2.** Rules 804(b)(3) and (5) read

*(b) Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

*(3) Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*(5) Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the

court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

**3.** Skinner also testified that Petty had told him that she was working for Charles White. Defendant immediately objected, and the court instructed the jury to disregard that statement and any inferences they might draw from it.

trip to Erie as being arranged by White "for the purpose of prostituting me and Michelle Sims. . . . " As a result, the edited statement related the trip to Erie without explicit reference to Annette Petty's own role as a prostitute; nor did it contain her accusations that White was her pimp. The combined oral statement and redacted written statement provided evidence that Petty was a prostitute and that White accompanied her and Michelle Sims to Erie.

■ With this background, we turn to appellant's specific objections to the court's ruling. Appellant argues that, even in unedited form, Petty's statements were not against her penal interest because she knew that "she had virtual immunity from prosecution because of her status as a key government witness" against White. Yet, in these statements, Petty said that she went to Erie for the purpose of prostituting herself, thereby subjecting herself to the possibility of state prosecution for prostitution. Furthermore, during both interviews, the FBI agents advised her that "Anything you say can be used against you in Court," and her signed statement declared that "no promises . . have been made to me. . . . " Appellant warns us of the possibility that Petty made these admissions in order to "curry favor" with the police.[4] But we believe that the facts of this case at least point to the trustworthiness of her admissions that she was a prostitute. The statements were

made approximately two weeks after her arrest for prostitution; she was not in custody when she made them;[5] and she had little to gain from her admission of a state crime to a federal officer.[6] The district judge, therefore, did not err in concluding that a reasonable person in Petty's position "would not have made the statement unless he believed it to be true."

Appellant claims that even if the unedited written statement was against penal interest, the edited statement was not admissible, since it contained no reference whatsoever to Petty's role as a prostitute.[7] Pointing to *United States v. Marquez,* 462 F.2d 893 (2d Cir. 1972) and *United States v. Seyfried,* 435 F.2d 696 (7th Cir. 1970), appellant argues that if a statement against penal interest is severable, then only that portion which is directly against penal interest may be admitted. But *Marquez* and *Seyfried,* supra, involved situations where the declarant simultaneously tried to accept responsibility for a crime and to exculpate others. The Government argues that such exculpatory statements are particularly untrustworthy and that, therefore, exclusion of the exculpatory portion of the statement is appropriate. In fact, Rule 804(b)(3) provides that such exculpatory statements are not admissible "unless corroborating circumstances clearly indicate" their trustworthiness. No comparable provision exists with respect to statements made against penal interest that implicate others,[8] al-

---

4. The Advisory Committee Note to Rule 804(b)(4) [enacted as Rule 804(b)(3)] specifically recognized the dangers posed when a statement against penal interest is made in custody or in other situations where declarant may be seeking "to curry favor with the authorities." See also *Bruton v. United States,* 391 U.S. 123, 141–42, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (White, J., dissenting).

5. Her first statement was made in the Buffalo Police Station, but Agent Skinner testified that, to his knowledge, she was not in custody at the time. Her second statement was made less than one week later, in her own home.

6. As appellant points out, Petty was not in danger of federal prosecution, and her statement to the federal officers was, therefore, not tainted by the possibility that she sought to

shift the onus of their investigation from herself to another.

7. These references were deleted from the written statement because they were phrased in terms of Petty's conclusions as to White's purpose in transporting her to Erie. Because of the danger that the jury might "perceive that something was cut out of it," the redacted statement was not given to the jury, but was paraphrased for them by Agent Skinner.

8. As originally drafted, Rule 804(b)(4) [now (b)(3)] provided that: "A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception." This clause was deleted by the House of Representatives. See Report of Committee on the Judiciary, House of

though it has been suggested that the reliability of the latter is similarly doubtful, and the prejudice against an accused so great that "exclusion should almost always result when a statement against penal interest is offered *against* an accused." 4 Weinstein's Evidence, supra, ¶ 804(b)(3)[03] at 804–96. (Emphasis in original).

■ On the record before us, however, we need not reach the issue whether Rule 804(b)(3) requires that the portion of a statement against penal interest be separated from the portion implicating the defendant and the latter excluded from evidence. See 4 Weinstein's Evidence, supra, ¶ 804(b)(3)[02] at 804–87–89; 5 Wigmore, Evidence § 1477 (Chadbourn rev. 1974); see also *Bruton v. United States,* 391 U.S. 123, 143, 88 S.Ct. 1620, 20 L.Ed.2d 476 (White, J., dissenting). In this case, the bulk of Petty's inculpatory statements was deleted by the court, and eventually all that remained were her description of the trip to Erie and her assertion that White accompanied her. White's presence on the trip had already been established, in detail, by the testimony of Alice DuBois and Michelle Sims, and their testimony in turn was supported by Officer DiPaolo. Petty's statement merely corroborated this testimony, without providing the damning link that White had arranged the trip for the purpose of prostitution. And while it is true that defendant sought to impeach the credibility of DuBois and Sims, the trial judge gave a careful instruction to the jury on Petty's own credibility as a youth, an admitted prostitute, and a possible accomplice to the crime. Under these circumstances, the admission of Petty's statements, as edited, was, if error at all, harmless error.[9]

■ Similarly, we find that appellant's claim that the admission of Petty's statements violated his rights under the confron-

tation clause is without merit. Although the declarant was not equally available to both sides, see *Dutton v. Evans,* 400 U.S. 74, 88 n. 19, 91 S.Ct. 210, 27 L.Ed.2d 213, she was clearly unavailable to both, and her detailed statements contained sufficient indicia of reliability. See *Mancusi v. Stubbs,* 408 U.S. 204 (1972); see generally 4 Weinstein's Evidence, supra, at ¶ 800[04]. Her statements were, as indicated above, against her penal interest, and her first statement was made soon after the event and duplicated less than a week later. The statements were then corroborated by the three other witnesses and were not "crucial" or "devastating." See *Dutton,* supra; *United States v. Puco,* 476 F.2d 1099, 1102–08 (2d Cir.), cert. denied, 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973). There was, therefore, no violation of appellant's sixth amendment rights.

## II

■ The day after the jury was empaneled, a local newspaper printed an article on the White trial. For the most part, the article simply recited the facts surrounding the trial, but it did mention that Annette Petty had been strangled to death and that White had been accused of the murder and was found innocent. Defense counsel requested that the jurors be polled on whether they had read the article. Appellant urges on appeal that this article was highly prejudicial because it linked White to Petty's murder and might have reminded the jurors of the circumstances of her death.[10] But the question of whether to poll a jury on such an issue "is a matter clearly within the discretion of the trial court," *United States ex rel. Monty v. McQuillan,* 385 F.Supp. 1308, 1311 (E.D.N.Y.1974), aff'd, 516 F.2d 897 (2d Cir. 1975); *United States*

---

Representatives, 93rd Cong., 1st Sess., Proposed Rules of Federal Evidence, No. 93–650, at 15–16 (1973). See generally Weinstein's Evidence, supra, ¶ 804, at 804–10–16.

9. In light of this conclusion, we need not reach the question whether Petty's statement was admissible under Rule 804(b)(5).

10. Two jurors did come forward and state that the trial had stirred their memories about the death of a prostitute in 1974. But one juror made this statement before the newspaper article was printed, and the other stated that he had never read any articles about defendant White.

*v. Edwards,* 366 F.2d 853, 873 (2d Cir. 1966), cert. denied sub nom. *Jakob v. United States,* 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967), and Judge Brieant's denial of the polling request here was not an abuse of that discretion. The judge had specifically instructed the jury on the previous day not to read any newspaper articles related to the case, and there was nothing to indicate that the jurors had violated this instruction. Also, the judge did not consider the article to be highly prejudicial; for the most part, it recited facts of which the jury was already aware, and although it linked White to Petty's murder and supplied his possible motive for the crime, it also related that he had been found innocent. Nor was the article part of widespread publicity on the trial, compare *United States v. Persico,* 425 F.2d 1375, 1379–80 (2d Cir. 1970), but rather was "a relatively small article" on the bottom of a page in one newspaper. In light of these facts, we conclude that the judge's ruling was not erroneous.

Accordingly, the judgment of conviction is affirmed.