**UNITED STATES of America, Appellee,**

v.

**Jack LOVE, Appellant.**

**No. 78–1687.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1979.

Decided Feb. 22, 1979.

Mark Fraase of Wegner, Fraase & Storslee, Fargo, N. D., argued, Steven A. Storslee, Fargo, N. D., on brief, for appellant.

Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., argued, James R. Britton, U. S. Atty., Fargo, N. D., on brief, for appellee.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Jack Love appeals from his conviction by a jury of one count of violating the Mann Act, 18 U.S.C. § 2421.[1] Love's primary contention on appeal is that the district court[2] erred in permitting a portion of an unsworn statement given by an unavailable witness to an FBI agent to be read to the jury. We agree and, accordingly, reverse and remand for a new trial.

On June 21, 1978, Love was indicted by a federal grand jury in North Dakota on three counts of violating the Mann Act. Since the indictment was based on a simultaneous transportation, the court required the government to proceed on only one count. The case came to trial on August 7, 1978, and the jury returned a verdict of guilty on August 9. This appeal followed from the district court's denial of Love's motion for a new trial.

The evidence adduced at trial showed that in the early part of 1978 Love was sharing a motel room and other expenses with Ronda Holmes (a/k/a Lola Lundgren) and Kelly Jo Arm (a/k/a Kim Kodluboy) in St. Paul, Minnesota. The evidence further indicated that although the women were primarily employed as dancers, Love was aware that on occasion they engaged in prostitution. Holmes and Arm had a dancing engagement at the Flame Bar in Fargo, North Dakota, which was scheduled to commence on March 13, 1978. On March 8 or 9 Love drove them and another woman to Fargo and he returned to St. Paul. While they were in Fargo, the women engaged in prostitution activities and on the night of March 16, 1978, both Holmes and Arm were arrested for prostitution. Arm is the woman Love was convicted of transporting in violation of the Mann Act.

Arm waived juvenile jurisdiction and was charged as an adult. Apparently pursuant to an agreement between Arm's counsel and the prosecuting attorney, after taking a venereal disease test which came back negative, Arm was allowed to post bond and forfeit it, thereby ending the North Dakota prosecution. She returned to Minnesota in the custody of Minnesota juvenile authorities.

At trial John Shimota, an FBI agent, was called as a witness for the government and was allowed, over defense counsel's objec-

---

1. Love was sentenced to five years imprisonment and fined $5,000.

2. The Honorable Ronald N. Davies, Senior United States District Judge for the District of North Dakota.

tion on hearsay, confrontation clause, and relevancy grounds, to read part of a statement taken from Arm on April 11, 1978, in Minnesota. The part of the statement read to the jury was:

> On Wednesday or Thursday afternoon, March 9, 1978, Jack Love in his automobile drove me, Rhonda Holmes, a girl named Red and Chester Morrison (phonetic spelling) from St. Paul, Minnesota to Fargo, North Dakota, arriving at approximately 7:00 P.M. Rhonda, Red and me checked into the Travel Inn Motel in Fargo. *Jack had previously told me I had to earn $1500 prostituting myself and that I was to turn over all of the money I made to him.* All three girls worked as prostitutes for four days and I made approximately $900. Jack Love had dropped us off in Fargo and then drove back to St. Paul. He was scheduled to pick us up in Fargo on March 20, 1978 after we had completed our dancing engagement at the Flame bar in Fargo, North Dakota. [Emphasis added.]

The above statement was not made under oath, was in Shimota's handwriting and was signed by Arm.

On appeal Love reasserts his claim that the statement was admitted in violation of the hearsay rule and the confrontation clause of the Sixth Amendment to the United States Constitution.[3] Mindful of our duty to avoid constitutional decisions unless necessary, we examine the hearsay issue first. Finding that admission of the statement violated the hearsay rule, we do not evaluate the merits of the confrontation clause issue.[4]

The government acknowledged that the statement was hearsay but offered it under the statement against penal interest exception to the hearsay rule found in Fed.R. Evid. 804(b)(3).[5] The court accepted the government's argument and allowed the statement to be read to the jury.[6] It is undisputed that the government made diligent efforts to produce Arm as a witness at trial, and that she was an unavailable witness as defined in Rule 804(a)(5).[7] Nor is

---

3. The Sixth Amendment provides in part:
 In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * *.

4. The Supreme Court has stated:
 While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception.
 *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970). *See also United States v. Scholle*, 553 F.2d 1109, 1119 (8th Cir. 1977); *United States v. Rogers*, 549 F.2d 490, 498–99 & n.9 & 10 (8th Cir. 1976).

5. Fed.R.Evid. 804(b)(3) provides:
 (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 * * * * * *
 (3) Statement against interest. A statement which was at the time of its making so

far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

6. The court in denying Love's motion for a new trial with respect to the same issue stated: "It is admittedly a close and perplexing question and is not definitively answered either by the legislative history of the rule or by recent case law. See *United States v. White*, 553 F.2d 310 at 313–314 (2nd Cir. 1977)."
 The government also offered the grand jury testimony of Arm but its admission was denied, apparently on the grounds that it did not fall within Rule 804(b)(3) because Arm had formally been granted immunity prior to her grand jury testimony. The correctness of that ruling has not been challenged on this appeal.

7. Fed.R.Evid. 804(a)(5) provides:
 (a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant—
 * * * * * *

there any support in the record for a claim that Love procured her absence. *Cf. United States v. Carlson,* 547 F.2d 1346, 1358–60 (8th Cir. 1976).

Despite the government's assertions to the contrary, we are not convinced that the statement subjected Arm to criminal liability when it was made, as is required by Rule 804(b)(3) to qualify as an exception to the hearsay rule. "Even a broadened penal interest exception must have some boundaries and must be limited at least to statements admitting a particular crime for which prosecution is possible at the time." *United States v. Dovico,* 380 F.2d 325, 327 (2d Cir.), *cert. denied,* 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967). The prosecuting attorney conceded during trial that when the statement was made the North Dakota charges of prostitution had already been disposed of by allowing Arm to post bond and forfeit it. Her activities did not subject her to federal charges because a woman transported in violation of the Mann Act is considered a victim rather than an accomplice. *Gebardi v. United States,* 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932); *Patterson v. United States,* 361 F.2d 632, 634 (8th Cir. 1966). The government claims that the statement subjected Arm to criminal liability because juvenile proceedings were pending in Minnesota. However, even assuming that juvenile proceedings could be equated with "criminal liability" for purposes of Rule 804(b)(3), these proceedings do not serve to qualify the statement under 804(b)(3). The juvenile proceedings involved charges that Arm was a runaway and the juvenile arrest was filed prior to her arrest in North Dakota. The juvenile charges were unrelated to her prostitution activities in North Dakota.

Furthermore, the circumstances under which the statement was made do not indicate that the statement was so far contrary to her interest when made that a reasonable person in her position would not have made the statement unless she believed it to be true. *See United States v. Bailey,* 581 F.2d 341, 345 & n.4 (3d Cir. 1978); *United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir. 1977). *See also* J. Weinstein & M. Berger, Weinstein's Evidence ¶ 804(b)(3)[03], at 804–93–96 (1977) (hereafter Weinstein's Evidence). Indeed, Arm may well have made the statement to "curry favor with the authorities." The Advisory Committee on the Federal Rules of Evidence noted:

> Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest.

Advisory Committee Note to Rule 804, *reprinted in* Weinstein's Evidence, *supra,* at 804–25. *See also United States v. Bailey, supra,* 581 F.2d at 345–46 n.4; *United States v. Gonzalez, supra,* 559 F.2d at 1273. *Cf. United States v. Rogers,* 549 F.2d 490, 498 n.8 (8th Cir. 1976) (recognizes that declarant's interest in obtaining a lesser sentence for his cooperation could have affected the reliability of the statement).

Arm was in the custody of Minnesota juvenile authorities at the time she made the statement to Shimota. Shimota conceded on cross-examination that in his interview with Arm he asked her if she had been in jail, told her it was not a desirable place, and that she was subject to prosecution. In addition, in a letter from Arm to Holmes postmarked two days after Shimota had visited her, Arm indicated that she was worried about further investigation by the FBI and wanted to get out of town as soon as possible.

If Arm was under the impression that she was subject to federal prosecution as an aider and abettor under the Mann Act [8] she may well have believed that it was

---

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

**8.** While we note that Arm may have been in fear of being charged as an aider and abettor under the Mann Act, nothing in her statement indicated that she was anything other than a victim for purposes of the Mann Act. *See Patterson v. United States, supra,* 361 F.2d at

in her best interest to make a statement implicating Love as the instigator in order to ingratiate herself with the FBI and divert attention to another. *Cf. United States v. White,* 553 F.2d 310, 313 & n.6 (2d Cir. 1977). In sum, the statement was not made under oath,[9] was oral and later transcribed by Shimota, was made while she was in custody, and it may have appeared to her that her best chance of being released promptly was to make a statement implicating someone else. In any event, Arm had a strong incentive to speak, whether it be truthfully or falsely. Such an incentive does not indicate sufficient reliability to bring the statement within the Rule 804(b)(3) exception to the hearsay rule.

We do not reach the issue of whether under Rule 804(b)(3) the portion of a statement against penal interest must always be separated from the portion implicating a criminal defendant with the latter excluded. *See United States v. White,* 553 F.2d 310, 314 (2d Cir. 1977). *See also* Weinstein's Evidence, *supra,* ¶ 804(b)(3)[03], at 804–96 ("Because of the dangers involved, exclusion should almost always result when a statement against penal interest is offered *against* an accused"). We simply hold in the present case the circumstances under which the statement was made lead us to conclude that the statement lacks the inherent reliability which justifies the declara-

tion against interest exception to the hearsay rule.

 Although it was not urged to the district court, the government argues on appeal that the statement was admissible under the "other exceptions" provisions contained in Fed.R.Evid. 804(b)(5).[10] The history of Rule 804(b)(5) and its counterpart, Rule 803(24), indicates that Congress did not intend to create a broad new hearsay exception. The intent of Congress was that Rule 804(b)(5) would be used very rarely, and only in exceptional circumstances. Such exceptional circumstances do not exist in this case. For a more complete discussion of the congressional history of the residual exceptions to the hearsay rule, *see United States v. Bailey, supra,* 581 F.2d at 346–47, and Weinstein's Evidence, *supra,* at 803–24–32.

 To be admissible under Rule 804(b)(5) the statement must, *inter alia,* possess "circumstantial guarantees of trustworthiness" equivalent to the specific exceptions provided in Rule 804. The same circumstances which lead us to conclude that the statement was not admissible under 804(b)(3) because it cannot be said "that a reasonable man in his position would not have made the statement unless he believed it to be true" requires us to reject the government's contention that the statement was admissible under Fed.R.Evid. 804(b)(5).

---

634. Thus the statement did not subject her to criminal liability.

**9.** It is fundamental to our system of justice "that men should not be allowed to be convicted on the basis of unsworn testimony." *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975). *Compare United States v. Carlson, supra,* 547 F.2d at 1354 (district court affirmed where statements admitted had been made under oath) *with United States v. Bailey, supra,* 581 F.2d at 350 (district court reversed where statement admitted was not made under oath).

**10.** Fed.R.Evid. 804(b)(5) provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 \* \* \* \* \* \*

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

There is a lack of surrounding circumstances which are indicative of a strong propensity for truthfulness which are present in the traditional hearsay exceptions. *See United States v. Bailey, supra,* 581 F.2d at 348–50; *United States v. Gonzalez, supra,* 559 F.2d at 1273–74. *Cf. United States v. Carlson, supra,* 547 F.2d at 1354 (statements admitted had been made under oath to grand jury, declarant stated at time of trial that he had told the grand jury the truth, and declarant had become unavailable as a witness because of threats made by the defendant).

We further note that to be admissible under Rule 804(b)(5) the court must determine that "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed.R.Evid. 804(b)(5)(C). In this case the admission of Arm's statement raises a serious confrontation clause issue. We agree with the Third Circuit that "in analyzing the admissibility of evidence pursuant to Rule 804(b)(5), a court should exercise its discretion in order to avoid potential conflicts between confrontation rights and this hearsay exception." *United States v. Bailey, supra,* 581 F.2d at 350. There is also some question whether the notice requirements of Rule 804(b)(5) were fully complied with. We do not decide whether a failure to strictly comply with the notice requirements alone would have been sufficient to preclude admission of the hearsay statement in this case because we hold that the statement did not otherwise qualify under 804(b)(5). *See United States v. Carlson, supra,* 547 F.2d at 1355.

■ Finally, we are unable to accept the district court's characterization that the error, if any, was harmless. The admission of Arm's statement was prejudicial because it was the only direct evidence presented that the purpose of the trip was for prostitution rather than dancing and that Love was aware of this fact. The issue of Love's knowledge and intent was the main issue contested during trial. In his testimony Love admitted driving the women to Fargo but denied that the purpose of the trip was for prostitution. The proof of Love's knowledge that a dominant purpose of the trip was for prostitution was essential to the government's case. *Cf. United States v. White, supra,* 553 F.2d at 313 n.7, 314 (where portions of statement that defendant arranged the trip for the purpose of prostitution were edited out). While the government's evidence of guilt was substantial, we are not able to say the admission of the hearsay statement was harmless error.

On this appeal Love also claims that the district court erred in not admitting the grand jury testimony of Holmes. His main argument is that it should have been admitted to counter the statement attributed to Arm. Arm's statement, of course, will not be admissible in a new trial. Therefore we do not decide the issue concerning Holmes' grand jury testimony since it will not reoccur. Furthermore, there is nothing in the record to indicate that Holmes will be unavailable as a witness on retrial. Love additionally claims that the district court improperly commented on the evidence. There is no reason to believe that the comments will be repeated in a new trial. Thus, we do not reach the merits of this claim.

We have examined Love's remaining claims of error that irrelevant evidence was admitted at trial, that one of the instructions was erroneous, and that there was insufficient properly admitted evidence to support the verdict. We find these contentions to be without merit.

Love's conviction is reversed and the case is remanded for a new trial.