UNITED STATES of America, Appellee,

v.

Edward GARRIS, Defendant-Appellant.

No. 518, Docket 79–1329.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1979.

Decided Feb. 25, 1980.

Barry Bassis, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant.

Scott G. Campbell, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, David C. Patterson, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before LUMBARD, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

LUMBARD, Circuit Judge:

Edward Garris appeals from a judgment of conviction, entered by Judge Duffy in the Southern District of New York on September 5, 1979, after a jury trial, for robbery, armed robbery, and conspiracy to rob a bank in violation of 18 U.S.C. §§ 371, 2113(a) and (d). Garris claims that the district court erred (1) in allowing an FBI agent to testify that Phyllis Garris, appellant's sister, stated to him, the agent, that Garris had made a statement to her that amounted to an admission of complicity in the robbery, and (2) in sentencing him to concurrent terms of imprisonment for the §§ 2113(a) and (d) convictions. We conclude that the district court did not abuse its discretion by admitting the agent's testimony, but that the simultaneous convictions for §§ 2113(a) and (d) should be merged. We therefore affirm the convictions for §§ 371 and 2113(d) and vacate the conviction under § 2113(a).

I.

Shortly after 10:00 a. m. on May 16, 1975, four men robbed a branch of the Bankers Trust Company at 177 East Broadway in Manhattan. One of the robbers stood at

the rear of the bank, holding customers and employees at bay with a shotgun he pulled out of a large artist portfolio. Another, who thrust his gun at the face of one person and into the ribs of a second, stood near the bank's front entrance. The other two robbers, one of whom shot a teller while brandishing his gun, vaulted the tellers' counter and scooped over $10,000 in cash from the registers into shopping bags. Upon the command of the robber at the rear of the bank, the two men vaulted back over the counter with their take, and all four men rushed out of the bank and made their getaway.[1]

The bank's surveillance camera photographed three of the robbers: the one in the rear, Allen Simon, a/k/a "Aroba," and the two who vaulted the counter, Cecil Robinson, a/k/a "Merciful" or "Merce," and a man whom even the other robbers knew only as "Karim."[2] The camera did not, however, photograph the fourth robber, who by standing near the front door was out of the camera's field of view.[3] The government adduced evidence at Garris's trial, which was held in July, 1979, after an arrest on other charges ended Garris's four-year fugitivity, to show that he, a/k/a "Allah Equality" or "AE," had been that fourth robber.[4]

The government's principal witness was Simon. He testified that he and his two friends, "AE" and "Merce," decided in early May, 1975 to rob a bank, that they met several times during the next two weeks to plan their robbery, and that they included "Karim" in their scheme because he, unlike any of them, owned a car.[5] Simon also recounted the details of the robbery, including the locations within the bank of each of the robbers, and of the getaway and the meeting later that morning at Garris's apartment to divide the money.

To corroborate Simon's testimony, the government showed that Garris's fingerprints had been found in the abandoned getaway car and that Garris had been absent from his job not only on the day of the robbery, but also at each of the times Simon recalled as the occasion of one of the robbers' planning sessions. Additionally, the government elicited testimony from eyewitnesses that the fourth robber had stood near the front door and aimed his gun at certain people, all of which corroborated Simon's recounting of Garris's actions in the robbery. The eyewitnesses could not, however, identify Garris as having been the fourth robber. Therefore, in order to corroborate Simon's testimony that Garris was the unphotographed robber, the government sought to introduce, and the district court admitted over the objection of defense counsel, the evidence in dispute: the testimony of FBI Special Agent Michael Kirchenbauer that Phyllis Garris said to him that shortly after the robbery Garris had said to her that no one had seen him in the bank although the others had been photographed.[6]

1. The robbers parked their car just outside the bank in order to flee quickly, but a bystander had time to note their car's license-plate number, for in the rush the robber who was driving momentarily lost his car keys.

2. Simon was arrested on June 17, 1975. He confessed and named Robinson and Garris as his confederates. Simon and Robinson have both been convicted. "Karim" was not indicted. *See United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977) (en banc), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978).

3. The fourth robber was supposed to cover the surveillance camera with a pillowcase he was carrying under his jacket for that purpose. He forgot.

4. Garris presented no evidence in his defense.

5. Two days before the robbery, Karim was in an accident that destroyed his car. The car the robbers used, and then abandoned, was registered to Otis Brown, an acquaintance of Robinson's. *See United States v. Robinson, supra*, 560 F.2d at 510. Simon presumed that the car, which he had never seen before, had been stolen.

6. As required by Fed.R.Evid. 804(b)(5), one of the grounds upon which the district court relied in admitting this testimony, the government notified defense counsel, and the district court, in advance of the trial of its intention to offer the statement and of the statement's particulars.

Phyllis Garris made this statement to Kirchenbauer on June 20, 1975, in the course of admitting her complicity in a robbery on that day of the branch of Manufacturers Hanover Trust Company at which she worked as a teller. In response to questioning by Kirchenbauer, who by this time knew of her brother's role in the Bankers Trust robbery, Phyllis stated that Garris had called their mother's house shortly after the Bankers Trust robbery, and that he had said to her, essentially, that he had not been photographed in the bank.[7] Phyllis further told Kirchenbauer that on June 17, 1975, she had concealed from FBI agents in search of Garris at their mother's house the fact that she knew how to reach her brother. After the agents left, Phyllis told Kirchenbauer, she talked to Garris's girlfriend, Karen Lyles, who instructed her to meet him inside a theatre on 86th Street. Phyllis further stated that in the theatre Garris told her, first, that he had not been photographed because he had not been in the bank, but, second, that he had to evade the police anyway and therefore would send someone she did not know to her teller's window at Manufacturers Hanover Trust in order to get the money he needed to effect his escape. Phyllis stated that she initially resisted but later explained the layout of the bank to Karen Lyles and stopped by her apartment on the morning of what she knew to be the day of the robbery in order to show Lyles what she was wearing. On June 20, a female approached Phyllis's window, handed her a note demanding money, and was given $5,000 by Phyllis.

Phyllis made these statements to Kirchenbauer at the FBI's Manhattan headquarters, having voluntarily gone there with FBI agents who discerned her relationship to the unapprehended Garris while questioning her at Manufacturers Hanover Trust. Kirchenbauer advised Phyllis of her rights before asking her any questions, and he took notes as she answered, abbreviating nothing of substance. He reviewed his notes with her for accuracy at the end of the interview.

Prior to receiving Phyllis's and Kirchenbauer's testimony before the jury, the district court held a hearing outside the jury's presence. Phyllis testified that she did not recall telling Kirchenbauer that Garris had said to her that he had not been photographed, but that she did recall answering all of Kirchenbauer's questions truthfully. After hearing Phyllis's testimony and inspecting Kirchenbauer's notes, the district court ruled that Phyllis's lack of memory of her statement made her an "unavailable" witness under Fed.R.Evid. 804(a)(3),[8] that her statements had been against her penal interest, and that therefore, after Phyllis testified before the jury as to her lack of memory, Kirchenbauer could testify as to her statement under Fed.R.Evid. 804(b)(3), the "penal interest" exception to the hearsay rule.[9]

## II.

Garris suggests two reasons why the district court should not have allowed Kirchenbauer to testify, under Fed.R.Evid. 804(b)(3), as to Phyllis's repetition to him of Garris's admission to her.[10] First, Garris

---

7. Kirchenbauer's notes of this portion of Phyllis's statement read: "PHYLLIS said that EDDIE stated that nobody had seen him in the bank, although, he knew that pictures of the other individuals who robbed the bank had been published on television and in the press."

8. Garris does not dispute that Phyllis was an "unavailable" witness under Fed.R.Evid. 804(a)(3), which states:
   " 'Unavailability as a witness' includes situations in which the declarant—testifies to a lack of memory of the subject matter of his statement . . . ."

9. Fed.R.Evid. 804(b)(3) states, in relevant part:
   "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: A statement which . . . at the time of its making . . . so far tended to subject [the declarant] to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true. . . ."

10. Garris does not dispute that his statement to Phyllis constitutes an admission of complicity

claims that that segment of Phyllis's statement to Kirchenbauer—that is, her repetition of Garris's admission—did not fall within the penal interest exception because it was not itself, standing alone, against Phyllis's penal interest. Second, and alternatively, Garris claims that even if Phyllis's repetition is against her penal interest, either standing alone or in its context, it lacks the trustworthiness inherent in most against-interest statements because Phyllis might have been motivated to say it, not by the belief that it is true, but by the hope of ingratiating herself or "currying favor" with the authorities by inculpating, though at the cost of inculpating herself, one whom she knew they suspected in the Bankers Trust robbery. We reject both arguments, the first for lack of legal support and the second for lack of factual.

The only portion of Phyllis's statement to Kirchenbauer that was specifically mentioned before the jury was her repetition to him of Garris's admission of complicity in the Bankers Trust robbery; the government asked neither Phyllis nor Kirchenbauer about the meeting in the theatre or the robbery of Manufacturers Hanover Trust. Garris's claim that the district court erred in admitting solely Kirchenbauer's testimony of the repetition—because by itself the repetition was not against Phyllis's penal interest—is unpersuasive for two reasons.

■ First, Garris is wrong in arguing that Phyllis's repetition of his admission was not against her penal interest. A statement will satisfy Rule 804(b)(3)'s requirement that it "tended" to subject the declarant to criminal liability if it would be probative in a trial against the declarant. *United States v. Alvarez*, 584 F.2d 694, 699 (5th Cir. 1978); *United States v. Barrett*, 539 F.2d 244, 251 (1st Cir. 1976). Phyllis's repetition of Garris's admission would be

probative in a trial against her for acting as an accessory after the fact in the Bankers Trust robbery, in violation of 18 U.S.C. § 3, for it shows that with knowledge of her brother's offense she concealed from the FBI that she knew how to contact him. Thus, even standing alone, the segment of Phyllis's statement which was admitted was against her penal interest.

■ Second, Garris is wrong in arguing that a remark taken out of a statement which as a whole is against penal interest must itself, standing alone, be against the declarant's penal interest in order to be admitted. There is no such requirement for Rule 804(b)(3); rather, it suffices for admission under that rule that a remark which is itself neutral as to the declarant's interest be integral to a larger statement which is against the declarant's interest. *United States v. Barrett, supra*, 539 F.2d at 252–53; *cf. United States v. White*, 553 F.2d 310, 313–14 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1972). Here, Phyllis's repetition of Garris's admission, even putting aside its weight against her as an accessory after the fact in the Bankers Trust robbery, was integral to her admission of complicity in the Manufacturers Hanover Trust robbery, for it explained her motive: to aid her brother's escape after the Bankers Trust robbery. Furthermore, a requirement such as Garris suggests would not make sense. The district court must have the discretion to edit a statement against interest and allow the jury to hear only such part as is relevant to the issues before it. Most of Phyllis's statement concerned the Manufacturers Hanover Trust robbery, not the Bankers Trust robbery for which Garris was on trial. The district court acted within its discretion in limiting what the jury heard to that portion of Phyllis's statement that was relevant to the trial at hand, and in excluding the rest of the statement, which could only have un-

---

in the Bankers Trust robbery and is therefore admissible under Fed.R.Evid. 801(d)(2)(A), which states, in relevant part:

"A statement is not hearsay if— . . . The statement is offered against a party and is . . . his own statement . . . .."

fairly and unnecessarily prejudiced the appellant.[11]

Garris's second argument—that Phyllis's statement, even if against her interest, lacks the trustworthiness justifying the admission of against-interest statements because she might have made it in the self-interested hope of currying favor with Kirchenbauer, rather than in the belief that it was true—is also unpersuasive, although it raises a question which this circuit has not squarely answered before.

Phyllis made her statement to Kirchenbauer at FBI headquarters while answering questions about the Manufacturers Hanover Trust robbery, for which she knew that she was a suspect. Quite naturally, she was scared. The Advisory Committee on the Federal Rules of Evidence recognized, as have some courts, that in a situation such as this a danger exists that a declarant may attempt to shift blame onto another, or curry favor with the authorities, by inculpating another whom the authorities suspect or are seeking in a crime, and that therefore a statement inculpating both the declarant and another may actually be self-serving, and thus untrustworthy, rather than disserving, and thus trustworthy. Accordingly, although Rule 804(b)(3) places no restrictions on statements that inculpate another as well as the declarant and are offered against that other in a criminal trial,[12] as it does on against-interest statements that *exculpate* another and are of-

fered *by* that other in his defense,[13] the Advisory Committee Note to subdivision (b)(3) warns that "a statement admitting guilt and implicating another person, made in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Heeding that warning, this circuit stated in dictum in *United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978), that a statement inculpating both the declarant and the defendant might have been inadmissible had the declarant known that the person to whom he made the statement was a government agent. In *United States v. Bailey*, 581 F.2d 341 (3rd Cir. 1978), the Third Circuit reversed a conviction because the declarant made his against-interest statement, which was offered against the accused, in custody and pursuant to plea bargaining. Finally, in *United States v. Love*, 592 F.2d 1022 (8th Cir. 1979), the Eighth Circuit reversed a conviction because the against-interest statement admitted against the accused had been made in custody and after a warning to the juvenile declarant about the harshness of prison life.[14]

█ Recognizing the danger of statements that inculpate both the declarant and another does not answer the question before us, however, for, as the Advisory Committee Note to subdivision (b)(3) also says, "[w]hether a statement is in fact against

11. Quite properly, the government did not seek to elicit testimony from either Phyllis or Kirchenbauer about any part of Phyllis's statement except her repetition of Garris's admission, other than to establish that Phyllis remembered that she had answered all of Kirchenbauer's questions truthfully.

12. As originally drafted, Rule 804(b)(3) did exclude from its coverage an against-interest statement that inculpated another and was offered against that other in a criminal trial. That portion, according to *McCormick on Evidence*, § 276 n. 1 (1978 Supp.), "was removed from the draft submitted by the Advisory Committee to, and adopted by, the Supreme Court, on the theory that, while third party statements implicating the accused made by a declarant in custody or to a person in authority might well be motivated by a desire to curry favor, the same was not necessarily so with regard to all third-party implicating statements, and hence

that the matter could not appropriately be covered by general rule but must depend on the circumstances."

13. The last sentence of Rule 804(b)(3) reads:
"A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

14. Significantly, the court in *Love* stated:
"We do not reach the issue of whether under Rule 804(b)(3) the portion of a statement against penal interest must always be separated from the portion implicating a criminal defendant with the latter excluded. . . . We simply hold in the present case the circumstances under which the statement was made lead us to conclude that the statement lacks the inherent reliability which justifies the declaration against interest exception to the hearsay rule." 592 F.2d at 1026.

interest must be determined from the circumstances of each case." We must decide whether, considering all the circumstances, Phyllis's statement so far tended to *subject* her to criminal liability, rather than to relieve her of it, that a reasonable person in her position would not have made her statement unless he believed it to be true.

Notwithstanding the fact that Phyllis made her statement in custody and to a person in authority, three other circumstances convince us that her statement satisfied this objective test. First, nothing in the record suggests that Phyllis was given any reason to believe that a statement inculpating another, even though inculpating herself, would help her. As Phyllis stated to the trial judge outside the presence of the jury, no plea bargaining occurred; indeed, when Phyllis made her statement, she had not yet been arrested.[15] Kirchenbauer made no threats, nor suggested promises or fostered hopes of leniency. Second, Phyllis's statement to Kirchenbauer hardly appears calculated to sacrifice her brother to aid herself, for Phyllis told Kirchenbauer not only that Garris had told her that he had not been photographed while the others had, but also that later, in the theatre, Garris told her that he had not been photographed because he had not been in the bank. On the other hand, Phyllis knew that she was a suspect in the Manufacturers Hanover Trust robbery and her statement clearly inculpated her in that crime, as well as the Bankers Trust robbery. Third, because Kirchenbauer advised Phyllis of her rights before asking any questions, she knew that anything she would say could be used against her. Cf. *United States v. White, supra,* 553 F.2d at 313.

In sum, Phyllis was given no reason to believe that she would aid herself by inculpating Garris, her statement did not in fact consistently inculpate him, and she knew that her statement, which clearly inculpated her, would be used against her. A reasonable person in her position would not have made the statement that she made unless he believed it to be true.

In addition to these circumstances pertinent to the "reasonable person" test, other circumstances support the trustworthiness of Kirchenbauer's testimony. First, the evidence adduced at trial corroborates Phyllis's statement. Simon and the bank employees and customers who were present at the robbery all testified that the fourth robber, whom Simon identified as Garris, stood near the front door, which was out of the view of the camera. Simon also testified that the robbers discussed the fact that photographs of three of them had been published. This testimony is consistent with Phyllis's statement that Garris told her that he had not been photographed although the others had been. Second, Kirchenbauer carefully recorded Phyllis's statement by taking notes of her answers and abbreviating nothing of substance. At the end of the interview, he reviewed his notes with her for accuracy. During her testimony before the trial judge, outside the presence of the jury, Phyllis was shown portions of Kirchenbauer's notes that included, along with the statement inculpating Garris, other statements inculpating herself; and although she could not recall each of the statements, she said that she found nothing inaccurate in the notes of those statements she could recall. Third, Phyllis's testimony before the trial judge, outside the presence of the jury, convinced the judge that Phyllis had had no desire to inculpate Garris in order to curry favor with Kirchenbauer. Phyllis stated to the trial judge that although she knew when she spoke to Kirchenbauer that her brother had gotten her into trouble, she felt no hatred toward him when answering Kirchenbauer's questions. To the contrary, she stated that she and Garris had been "very close" when young, and explained that they were "not really" close at the time of the

---

15. Phyllis was arrested after her interview with Kirchenbauer, and was indicted on August 4, 1975, with Garris and Lyles, for bank larceny. The charges against Phyllis were dropped on January 5, 1977.

robbery only because Garris had been in detention for the previous two years. Beyond this testimony, the trial judge had some reason to consider Phyllis trustworthy, for he knew that the reason the charges against Phyllis in the Manufacturers Hanover Trust robbery were dropped was that the government had determined that it had been she who triggered the surveillance camera when the robber came to her window. After hearing Phyllis's testimony and observing her demeanor, the trial judge stated that he found it difficult to believe that she would inculpate her brother in an attempt to save herself.

Finally, in addition to all the circumstances establishing the trustworthiness of Kirchenbauer's testimony, we note another, and most important, fact: Phyllis was only fictively an "unavailable" witness, for in fact she appeared before the jury and was cross-examined.[16]

Phyllis testified during direct examination that she could not recall telling Kirchenbauer that Garris had told her that he had not been seen in the bank. Defense counsel then cross-examined her as to her memory, or lack of memory, of her interview with Kirchenbauer and her fears in answering Kirchenbauer's questions. Furthermore, after Kirchenbauer testified before the jury as to Phyllis's statement, defense counsel elicited on cross-examination that Phyllis had also told Kirchenbauer that Garris had said to her in the theatre that he

had not been in the bank. The jury was therefore well able, in judging the testimony and demeanor of Phyllis and Kirchenbauer, to determine for itself how much weight to give to Kirchenbauer's testimony about Phyllis's statement. Thus, the trial judge's decision to admit Kirchenbauer's testimony, on the ground that Phyllis's statement so far tended to subject her to criminal liability that a reasonable person in her position would not have made it unless he believed it to be true, was only a preliminary assessment of Phyllis's statement. It still remained for the jury to pass judgment on Kirchenbauer's and Phyllis's credibility and the weight, if any, to be given to Phyllis's statement, if they believed—as they must have—that it was true.[17]

Considering all these circumstances, we conclude that the district court correctly decided that Phyllis's statement was against her penal interest and that Kirchenbauer could therefore testify as to it under Fed.R.Evid. 804(b)(3).[18]

### III.

One day after sentence was imposed upon Garris,[19] this circuit decided in *Grimes v. United States*, 607 F.2d 6, 15 (2d Cir. 1979), that simultaneous convictions under § 2113(a), for bank robbery, and § 2113(d), for armed bank robbery, should be merged if the convictions arose from a single criminal transaction, and that a conviction should be entered and a sentence imposed

**16.** Phyllis's availability for cross-examination forecloses any Confrontation Clause problems.

**17.** That the circumstances of this case differ significantly from those in *United States v. Love, supra,* 592 F.2d 1022, and *United States v. Bailey, supra,* 581 F.2d 341, on which Garris relies, is obvious. In *Love,* the declarant, a juvenile Mann Act victim, was not available for cross-examination at trial because she could not be found, and the FBI agent through whom her against-interest statement was admitted against the defendant conceded that he had "asked her if she had been in jail, told her it was not a desirable place, and that she was subject to prosecution." 592 F.2d at 1025. In *Bailey,* the declarant, who refused to testify at trial, inculpated himself and the defendant, his

accomplice in a bank robbery, in a statement which he had promised to make as part of a plea bargain and which he made prior to sentencing. 581 F.2d at 343.

**18.** Because we conclude that Kirchenbauer's testimony was properly admitted under subdivision (b)(3), we need not discuss subdivision (b)(5), the "residual" exception to the hearsay rule and the other ground upon which the district court admitted the testimony.

**19.** Garris was sentenced to concurrent terms of five years imprisonment for the § 371 conviction (conspiracy to rob a bank), twenty years for the § 2113(a) conviction (bank robbery), and twenty-five years for the § 2113(d) conviction (armed bank robbery).

only under § 2113(d). We therefore vacate Garris's conviction for § 2113(a).[20]

Affirmed in part and reversed in part.

20. This result, of course, does not change the length of Garris's sentence, for the §§ 2113(a) and 2113(d) sentences run concurrently.