UNITED STATES of America, Appellee,

v.

Miles FORD, Defendant-Appellant.

No. 1185, Docket 85–1020.

United States Court of Appeals, Second Circuit.

Argued May 14, 1985.

Decided Aug. 27, 1985.

Henry Pitman, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Stacey J. Moritz, Asst. U.S. Atty., New York City, of counsel), for appellee.

John P. Cooney, Jr., New York City (Susan K. Knipps, New York City, of counsel), for defendant-appellant.

Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.

LUMBARD, Circuit Judge:

Miles Ford appeals from a judgment of conviction, entered after a jury trial before Judge Edelstein in the Southern District, for conspiracy to distribute and to possess with intent to distribute cocaine, 21 U.S.C. § 846 (1982), and for distributing and possessing with intent to distribute cocaine. 21 U.S.C. § 841 (1982); 18 U.S.C. § 2 (1982). Ford was sentenced to concurrent one-year terms of imprisonment on each of the two counts, to be followed by a three-year special parole term. We affirm.

On the afternoon of September 27, 1984, undercover Police Officer Sherranda Rush and Detective Cleveland Baxter of the New York City Police Department, along with another officer, drove to the vicinity of 129th Street and Lenox Avenue in Manhattan. There they observed a group of three men on the northwest corner of 129th and Lenox.

Officer Rush and Detective Baxter got out of their car and walked towards Lenox, on 129th Street. As they neared the corner, the three men, later identified as Ford, Waldron Thomas, and Keith Richards, approached the two officers. Ford reached them first and asked "How many do you want?" Detective Baxter told Ford to "see [his] girl," gesturing toward Officer Rush, and Rush answered "Two."

Keith Richards immediately intervened, told Officer Rush that he had "nice rocks," a reference to freebase cocaine, and asked her for money. Rush gave Richards $40 in pre-recorded buy money and Richards counted it and told Waldron Thomas that it was "good." Thomas then removed sever-

al vials of cocaine from a blue pocketbook, and told Officer Rush to choose two. Rush did so, thanked the three men, then returned with Baxter to the car.

The officers notified a backup team and provided descriptions of Ford, Richards and Thomas. Officer Rush then saw Ford go into a building at 105 West 129th Street and shortly thereafter emerge with Thomas. Thomas was taken into custody on the northwest corner of 129th and Lenox Avenue; Ford and Richards were arrested inside the building, a social club. The $40 of buy money, an additional $130, and a blue pocketbook containing 16 vials of cocaine were found on Thomas.

Ford and Thomas were subsequently tried together and convicted.[1] Neither defendant presented any evidence.

■ Ford claims three errors on appeal. First, Ford contends that the evidence presented at trial was insufficient to sustain a guilty verdict. We find this argument unpersuasive. Ford initiated the drug transaction by asking Officer Rush "how many" she wanted. She responded to Ford that she wanted two. Ford was close by during the exchange of money and drugs and was later observed in the company of both his confederates. Unlike *United States v. Jones*, 605 F.Supp. 513 (S.D.N. Y.1984), where the evidence was insufficient to show that the defendant, standing across the street, was even aware that a drug sale was in progress, the evidence which the jury credited shows that Ford actively participated in the street corner sale, that he expected to profit therefrom, and that Ford acted with full knowledge of the character of the illegal transaction.

■ Ford next challenges the exclusion of post-arrest hearsay statements made by Richards and Thomas during prearraignment interviews by an Assistant United States Attorney. The statements, which Ford sought to introduce as declarations against penal interest pursuant to Fed.R.

Evid. 804(b)(3), were offered to show that Ford was not the "steerer" of the street corner sale. Richards made statements to the effect that Ford was attempting to "steer" the undercover police officer, in order to get free narcotics from Thomas, but that Richards reached her first; Thomas indicated that he was associated with Keith Richards, but that he merely "saw" Ford on the day of the sale.

About two weeks before trial, Ford's counsel was advised that the government did not intend to introduce, as part of its case, post-arrest statements made by Richards and Thomas. Ford thereupon moved for a ruling on their admissibility under Fed.R.Evid. 804(b)(3) as statements against penal interest by unavailable witnesses. Upon the government's objection and Thomas' objection to Richards' statement, Judge Edelstein said he would exclude the statements. Ford thereupon offered a redacted version of Richards' statement.

The essential part of Richards' statement, with the proposed redacted version in italics, is as follows:

"Q: So basically, you steer people to seller, take money and then give money to seller in exchange for free crack [freebase cocaine].

A: If run 3 customers to Seller, get one myself.

. . . . .

Q: *Steer anyone today?*

A: *One girl who came to me, gave $40 and guy gave 2 cracks, he said, 'take what you want.'*

. . . . .

Q: *Only steered one today?*

A: *Yes, girl came to me* and Steve came up and gave cracks.

Q: She gave you money and you gave money to Steve?

A: Yes.

Q: What was kid doing in green jacket [defendant Ford]?

---

**1.** Richards was a fugitive at the time of the trial of Ford and Thomas. He was later arrested, pled guilty to one count of the indictment on March 21, 1985, and was later sentenced to nine years in prison.

A: Doing same thing. Trying to steer her. Wanted to get one to smoke too. Run 5, get one.

Q: But he didn't get her, you did?

A: He didn't get her, she came to me first."

The government objected to the redacted version, arguing that it was incomplete and misleading. Thomas also objected to the redacted version, and Judge Edelstein adhered to his decision to exclude.

At the outset, we note that the unambiguous testimony of Police Officer Rush and Detective Baxter implicated Richards as receiver of the money, Thomas as supplier of the cocaine, and Ford as "steerer" of the transaction. That testimony contradicted the post-arrest statements of Richards and Thomas regarding Ford, thereby raising some question about the credibility of those statements. Further, there was no corroboration of the statements. Neither Ford nor Thomas offered any evidence. Even an explanation by Ford himself was lacking, as Ford did not take the stand. Although Ford argues that the statements are mutually corroborative, in view of the other evidence which contradicted those statements, Judge Edelstein acted within his discretion in excluding them. *See United States v. Beltempo*, 675 F.2d 472, 479–80 (2d Cir.1982).

An additional factor which the court could not ignore was Thomas' objection to the admission of Richards' statement. Even the proposed redacted version was strong support of the government's case against Thomas as the "guy" who "gave 2 cracks." Although separate trials, which Ford unsuccessfully sought, might have avoided this problem, we need not address the issue because the lack of corroborating evidence alone was sufficient to justify the exclusion.

Furthermore, the redacted version proposed by Ford's counsel was, as the government argued, incomplete and misleading. It omitted the statement that Ford was trying to steer the police woman to a seller in order to earn some cocaine to smoke.

We have examined the authorities cited by Ford and find none which supports Ford's claim that it was reversible error for the district court to exclude the statements, or any part of them.

Finally, Ford contends that the trial court committed reversible error by *sua sponte* giving a missing-witness charge to the jury. We do not agree. Where appropriate, the trial judge may give an uncalled-witness instruction even in the absence of a request from the parties. *United States v. Armone*, 363 F.2d 385, 405 (2d Cir.), *cert. denied*, 385 U.S. 957, 87 S.Ct. 398, 17 L.Ed.2d 303 (1966). Here, the instruction was invited when Ford's counsel suggested, in his summation, that an adverse inference against the government could be drawn from its failure to call a fingerprint expert.

The judgment of conviction is affirmed.

OAKES, Circuit Judge (dissenting):

The central issue in this case is whether Ford manifested enough purposeful behavior implicating him in the cocaine transaction for a jury to have returned a guilty verdict. The Government's case against him turns on his role as an aider and abettor—in the context of this case, on his role as a "steerer." But the undisputed nature of the transaction indicates that Richards, not Ford, was the steerer. The evidence leaves unclear the role Ford played. The Government argues that Ford initiated the transaction with his question, "How many do you want?" Ford's utterance, however, only indicates that he intended to initiate *a* transaction. It is insufficient to implicate him in the cocaine transaction for which he was convicted. Although a jury could be sure beyond a doubt that Ford was not hawking sunglasses or stepladders, it is also reasonable to suppose that Ford was hawking "joints" of marijuana, not cocaine. Detective Rush herself conceded during cross-examination that young black men have attempted to sell her marijuana "joints" with the lead, "How many do you want?" (App. 336). I do not know what

the "circumstances" are that the majority says permit the inference of Ford's expectation to profit from Thomas's cocaine sale; the evidence is that he did not do so.

Ford's argument that the court improperly excluded Richards's and Thomas's hearsay statements is also cogent. The district court refused to admit the statements apparently because it concluded that the statements did not satisfy the conditions set forth in Rule 804(b)(3) for admission of hearsay statements against penal interest. The court's position is difficult to understand in light of this court's decisions in *United States v. Lieberman*, 637 F.2d 95 (2d Cir.1980), and *United States v. Garris*, 616 F.2d 626 (2d Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980), holding that a statement neutral to a declarant's interests is admissible under Rule 804(b)(3) if part of a larger statement itself inculpatory to the declarant. *See Lieberman*, 637 F.2d at 103; *Garris*, 616 F.2d at 630. The statements Ford sought to admit were of the sort qualifying under *Lieberman* and *Garris*, while the Government's attempt to interpret *Lieberman* and *Garris* as cases establishing that Rule 804(b)(3) benefits only the prosecution borders on the arrogant. It should be noted that by "neutral statements" this court has meant statements "neutral as to the *declarant's* interest," *Garris*, 616 F.2d at 630 (emphasis added), as against the Government's claim that *Garris* neutrality precludes the admission of statements exculpatory to a *non-declarant* such as Ford. If instead the court's denial of the motion was based on its independent assessment of the trustworthiness of the statements, then the court abused its discretion; there was no evidence that the statements, which were clearly corroborative of the Government's case against Thomas and Richards, are untrustworthy. The Government's claim that the statements "are flatly contradicted by the officers' testimony," Government Brief at 18 n. **, is inexplicably lame. The question of what Ford intended is the issue here. That is not a question to be begged by accepting the views of the police on faith and rejecting other accounts because they disagree with the police version.

Accordingly, I am required to dissent.