**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lynne Wallace WALKER,
Defendant-Appellant.**

**No. 76–3425.**

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1977.

Ronald J. Waska, Houston, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., Leroy M. Jahn, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before COLEMAN, Circuit Judge, KUNZIG, Judge,* and GEE, Circuit Judge.

KUNZIG, Judge.

Mrs. Lynne Wallace Walker (defendant-appellant) was indicted, tried and convicted of mailing obscene matter through the United States mail in violation of 18 U.S.C. § 1461 (1970). Advertisements (including pictures) and films made up the obscene material. They allegedly depicted the rape of a twelve year-old girl by her brother, and two girls having intercourse with a dog and a pony. Defendant combats the Government's charges with allegations of her own involving prosecutorial misconduct, judicial behavior, venue, and entrapment—the issues now before the court.

We are not persuaded by the arguments advanced by defendant and herewith affirm the conviction reached in the district court below.

The facts are these: In 1970, a Postal Inspector for the United States Postal Service arranged for a fictitious mailing address to be established in the name of Robert Lyons, Box 131, Hondo, Texas. On No-

vember 27, 1974, an unsolicited advertisement which formed the basis for Counts One and Two of the subsequent indictment was mailed from California to the Hondo, Texas address. The advertisement offered numerous films for sale, one of which was titled "Cin-Kay-2" and was portrayed as a film depicting the rape of a twelve year-old girl by her brother.

The return address on the envelope containing the advertisement was "Two Gals from Cal," 1505½ Colorado Boulevard, Eagle Rock, California. Subsequent investigation by postal authorities established that this address in Eagle Rock, California, was the location of an artist studio maintained by Michael Hogarth, a friend of appellant. Mr. Hogarth had made this postal box available to appellant at her request; appellant had the only key to the box and received all mail addressed to "Two Gals from Cal."

The film "Cin-Kay-2" was ordered by the Postal Inspectors and received at the Hondo, Texas Post Office box on January 15, 1975. In addition to the film, the parcel contained other advertisement brochures. The film and subsequent advertisements provided the basis for Counts Three and Four of the indictment.

In response to the second advertisement, Postal Inspectors ordered the movie "Horse Power," which was depicted as a film portraying two girls having intercourse with a dog and a pony. On February 13, 1975, the film "Horse Power," also with additional advertisement, was received at the Hondo, Texas Post Office box. The movie "Horse Power" and the third set of advertisements formed the basis for the charges contained in Counts Five and Six of the indictment.

The return address on the parcel containing the film "Horse Power" was 256 South Robertson Boulevard, Beverly Hills, California. Subsequent investigation showed this address to be that of a commercial mail drop service engaged by Mrs. Walker under an assumed name. Appellant was identified by the manager of the commercial mail

---

* Judge of the United States Court of Claims, sitting by designation.

drop as the person who had engaged the service. Later investigation also showed that the money orders sent to purchase the films were deposited in appellant's checking account.

Mrs. Walker was indicted on January 14, 1976, by a grand jury in the Western District of Texas. She was charged with six separate counts of sending obscene matter through the United States mail in violation of 18 U.S.C. § 1461. Appellant entered a plea of not guilty. Her first trial resulted in a hung jury and a mistrial was declared. She then filed a motion requesting the court to transfer the case from the Western District of Texas to the Central District of California. The motion was denied and appellant retried in the Western District of Texas.

At the second trial, before Judge John H. Wood, Jr., the Government added to the evidence presented at the first trial (outlined *supra*) by having a Postal Service handwriting expert identify the handwriting on the parcels as that of the appellant. Mrs. Walker was found guilty on all six counts of the indictment.

Subsequent to her conviction, Mrs. Walker was sentenced to concurrent three-year terms on each of five counts of the indictment. In addition, she received a non-concurrent five-year term on the remaining count of the indictment. This term was suspended and appellant placed on supervised probation for a term of five years. Because of the way sentence was imposed, appellant was sentenced to a maximum term of imprisonment of three years, to be followed by five years of supervised probation. Appeal to this court followed.

Mrs. Walker mounts a five-pronged attack seeking to have her conviction upset. First, she alleges that the prosecutor, in final argument, commented improperly on her failure to testify. The Government answers that, taken in context, there was no impropriety involved. Second, appellant lists a series of items which she alleges prejudiced her case, such as the judge's attitude in court, his comments and restrictions on defense counsel, and so forth. The Government combats these items point by point, arguing there was no prejudice to appellant. Third, Mrs. Walker alleges she was deprived of a fair trial by the District Court's failure to grant her motion to transfer the case to California. The Government urges that there has been no showing how the trial court in any way abused its discretion in refusing to transfer the case. Fourth, defendant argues entrapment, which the Government denies. Finally, Mrs. Walker claims the Government did not furnish exculpating material pursuant to the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government answers that this court has previously held that *Brady* imposes no obligation on the part of the Government to *seek out* such evidence.

After excellent arguments by counsel on both sides and thorough analysis of all issues brought before the court, we hold for the Government and affirm the conviction.

First and foremost, it must be made patently clear that *the question of whether the advertisements and films are obscene is no longer at issue in this case. The jury found them obscene; defendant has not appealed this determination.* Counsel for Mrs. Walker conceded this again at oral argument and did not attempt thereafter to argue the point further.[1]

## PROSECUTORIAL MISCONDUCT

Appellant's first argument centers on statements made by the prosecutor at final argument allegedly commenting on Mrs. Walker's failure to testify during trial.

---

1. For this reason we are not called upon to review trial court instructions to the jury regarding the definition of obscenity. *See Splawn v. California*, —— U.S. ——, ——, 97 S.Ct. 1987, 52 L.Ed.2d 606 (1977) (challenge to instruction to jury permitting jury to consider motives of commercial exploitation in reaching its verdict rejected.); *Smith v. United States*, 431 U.S. 291, 307–308, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977) (state legislature cannot declare what the community standards shall be.) Nor are we concerned with a challenge to the constitutionality of 18 U.S.C. § 1461. *See Smith v. United States, supra.*

Appellant contends that language used by the prosecutor was "plain error in that it was a direct comment on Defendant's failure to testify," and relies on *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Government, also relying on *Griffin*, claims that the prosecutor's statements were proper because they were not a comment on Mrs. Walker's failure to testify, but merely a characterization of the defense theory that the Government had failed to prove its case.

■ It is well established that *Griffin*, *supra*, forbids comment by the prosecution on the accused's silence at trial. 380 U.S. at 615, 85 S.Ct. 1229. In determining whether a prosecutor's statements constitute "forbidden comment" we must examine them in their entirety and decide if they were manifestly intended or of such character that a jury would naturally take them to be a comment on the failure of the accused to testify. *United States v. Jennings*, 527 F.2d 862, 870–71 (5th Cir. 1976); *United States v. Wilson*, 500 F.2d 715, 721 (5th Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

The contested statements by the prosecutor read as follows:

> Lynne Wallace Walker made a mistake by sending it [the obscene material] to the wrong person and she is now sitting up here saying not in retrospect that I didn't mean to do it or anything like that, but rather . . . "I challenge you." She has challenged the Government just as Sir Thomas Moore challenged the Government and the Government has met that challenge. Just as Sir Thomas Moore, she must be convicted. Evidence has been presented that proves this case beyond a reasonable doubt. We have proven obscenity. We have proven the mailing. We have proven the receipt here in the Western District of Texas.

■ These remarks, taken in their entirety and set in the context of this case, do not meet the test set forth in *Jennings* and *Wilson*, *supra*. Upon thorough examination of the record it is clear that the prosecutor was not commenting on defendant's failure to take the stand but instead was characterizing the defense's position. In closing argument, counsel for appellant had explained to the jury that he made the decision not to put his client on the witness stand and not to subject her to attack by the Government when the Government "failed so miserably to meet their [sic] burden."

It was in response to these statements that the prosecutor referred to the theory of the defense by the remark that Mrs. Walker "challenged the Government." Seen in this perspective the remarks are only an allusion to the burden of proof placed on the Government by appellant's plea of not guilty. There is no showing that the prosecutor's argument was "manifestly intended" to be a comment on defendant's failure to take the stand. Nor can we say that the remarks were "of such character that a jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." *United States v. Jennings, supra,* 527 F.2d at 870–71. The prosecutor was merely pointing out the burden the Government had to meet, and, in the opinion of the prosecutor, had met.

Given the overriding, non-offensive nature of the prosecutor's statements, lack of improper intent, and two positive instructions to the jury by the court that there was no obligation on appellant to testify and that the jury was not to draw inferences from her failure to do so, any impropriety in the remark must be held harmless error. *See United States v. McDowell,* 539 F.2d 435, 438 (5th Cir. 1976); *United States v. White,* 444 F.2d 1274, 1279 (5th Cir.), *cert. denied,* 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971).

## JUDICIAL BEHAVIOR

The second area of complaint raised by Mrs. Walker focuses on alleged abuses of discretion by the district court judge in the management of the trial. In particular Mrs. Walker draws the court's attention to three areas of supposed abuse. First she

points to the failure of the trial court to grant her a requested continuance. Second she claims the "speed and haste" with which the voir dire examination was conducted and the trial judge's refusal to allow certain questions to be asked of the prospective jurors deprived her of a fair trial. Finally, appellant urges that the trial atmosphere and alleged restrictions on cross-examination and development of defense theories require reversal of her conviction.

In essence, and as became clear at oral argument, appellant is seeking to bring this case within the scope of *United States v. Candelaria-Gonzalez,* 547 F.2d 291 (5th Cir. 1977), *United States v. Diharce-Estrada,* 526 F.2d 637 (5th Cir. 1976), and *United States v. Gordy,* 526 F.2d 631 (5th Cir. 1976), all of which involved reversals of this district court judge for improperly conducting criminal trials.

The Government counters with a thorough examination of the trial record attempting to show appellant was afforded a full and fair trial and complete opportunity to develop her case through cross-examination and presentation of defense theories. In short, the Government states that each area of complaint presented by appellant is one left to the discretion of the trial judge and that he did not abuse his discretion.

■ We agree with the Government. It is a settled rule that the trial judge has broad discretion in the management of the trial and that a reviewing court will be reluctant to interfere absent a clear showing of abuse. *United States v. Diharce-Estrada, supra,* 526 F.2d at 640; *United States v. Gomez-Rojas,* 507 F.2d 1213, 1223 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). No such abuse has been shown in this case.

■ Appellant first contends that she was prejudiced by denial of her motion for a continuance. Mrs. Walker's initial trial, which began on May 6, 1976, resulted in a hung jury and was declared a mistrial. On May 21, 1976, counsel for appellant ordered a copy of the transcript of that three-day long trial. The transcript was made availa-ble to counsel on June 7, 1976, the day before the start of the second trial (June 8, 1976). On June 8, counsel orally renewed a motion for a continuance made five days earlier premised on the fact that he had not received a transcript of the first trial and therefore had not had adequate time to prepare. The trial court denied the motion.

This court has determined that several factors are relevant in assessing claims of inadequate time for preparation. Among them are:

> the quantum of time available for preparation, the likelihood of prejudice from denial, . . . the degree of complexity of the case, the availability of discovery from the prosecution, . . . [and] the skill and experience of the attorney. [footnotes omitted]

*United States v. Uptain,* 531 F.2d 1281, 1286 (5th Cir. 1976).

In applying these factors to the case at bar, it should be kept in mind that this appeal is taken from appellant's second trial on the same charges and that appellant was represented by the same counsel throughout these proceedings (including now on appeal). The quantum of time dates from the time of indictment, some six months prior to the second trial. The case was not complex; it involved just two films, three advertising brochures, and nine government witnesses. Counsel, then, had adequate time to prepare.

In addition to having had complete discovery from the Government in accordance with Rule 16, Fed.R.Crim.Proc., appellant had already obtained a complete preview of the prosecution's case by the time of the second trial. With the exception of the handwriting expert called at the second trial, all of the witnesses were the same at both trials. Further, the transcript was available to appellant's counsel for impeachment purposes at the second trial.

The skill and experience of Mrs. Walker's attorney is evident from the fact that he obtained a hung jury verdict in the first trial and from his prior employment with the United States Attorney's Office for the Southern District of Texas where he rose to

chief of the Criminal Section. In view of all these facts, we hold that the trial court's denial of the motion for a continuance was a proper exercise of judicial discretion. *See, e. g., United States v. Uptain, supra; United States v. Gidley,* 5 Cir., 527 F.2d 1345, 1349, *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

Next we focus on Mrs. Walker's arguments directed at the voir dire examination. We do not find the trial judge's limitation of examination questions to be an abuse of discretion, *Smith v. United States,* 431 U.S. 291, 308–309, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), or to have violated the essential demands of fairness. *United States v. Rojas,* 537 F.2d 216, 219 (5th Cir. 1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir. 1976). In addition, a thorough search of the record does not support appellant's contention that the voir dire examination was conducted with "speed and haste" sufficient to prejudice her right to a fair and impartial jury.

Mrs. Walker's final attempt to show judicial misconduct centers on allegations of a tense and hurried trial atmosphere and trial court restrictions of cross-examination, taking exceptions to evidence, and development of defense theories.

As with the voir dire examination, the trial was not conducted "in such a hasty fashion that it failed to accord with fundamental fairness." *United States v. Diharce-Estrada, supra,* 526 F.2d at 640. A full review of the trial transcript shows a trial judge acting within his discretion to assure defendant a fair trial while at the same time keeping a close rein on the progress of the trial.

Concerning appellant's claim of unreasonable limitation of cross-examination, the record does not reflect the alleged excessive restrictions of the questioning of Government witnesses such as Postal Inspector R. H. Robinson, Postmaster J. H. Muennink and Postal Service employee S. C. Schimoda. Where the transcript does show restriction of cross-examination, it illustrates that

appellant's counsel was either attempting to testify improperly through questions or was seeking to elicit testimony previously ruled inadmissible. The record also shows that on several occasions defense counsel was allowed to exceed the normal scope of cross-examination—the subject matter raised by direct examination. *See United States v. Buchanan,* 500 F.2d 398 (5th Cir. 1974).

Likewise, the record does not support Mrs. Walker's position that the trial court refused her counsel sufficient time to indicate exceptions to the court's rulings. Examining the record as a whole (and particularly those portions cited to the court by appellant) we find that appellant was given ample opportunity to perfect exceptions. For example, appellant points to a short exchange concerning handwriting exemplars as supporting her contention that the trial judge failed to grant enough time to perfect an exception to the use of exemplars. However, Mrs. Walker fails to note that this exchange in fact covers some ten pages of the trial transcript and that the trial court specifically stated that appellant had preserved her exception. Appellant's other arguments in this area are similarly groundless.

Appellant's contentions seeking to show she was prejudiced by a hostile trial judge and not allowed to develop her theories of defense are also without merit. Contrary to Mrs. Walker's allegations, the trial judge did not violate his duty to "preserve the appearance of strict impartiality." *United States v. Candelaria-Gonzalez, supra,* 547 F.2d at 297. Certainly the trial judge was active in the management of the trial; he has a duty to participate directly in it and to facilitate its orderly progress. *Adler v. United States,* 182 F. 464, 472 (5th Cir. 1910). In performing his duty, Judge Wood did not violate the concomitant duty to remain impartial.

Turning to appellant's complaint regarding restrictions on the development of her defensive theories, the record shows that the trial court allowed defense counsel great freedom to develop her theories subject, of course, to the limits placed on the

admission of evidence by the Federal Rules of Evidence.

In summary of this section, we conclude, after examining each area of supposed judicial abuse and each citation to the trial transcript urged upon the court by appellant, that the district court judge did not abuse his discretion in the management of this trial. In no way do the actions of the trial judge in the case at bar come within the scope of those condemned by this court in *United States v. Candelaria-Gonzalez, supra, United States v. Diharce-Estrada, supra,* and *United States v. Gordy, supra.*

## CHANGE OF VENUE

 Mrs. Walker's third issue concerns the denial of a change in venue by the district court. Between her first and her second trial, she filed a motion requesting the trial court to transfer her case to the Central District of California pursuant to Rule 21, Fed.R.Crim.P. However, the obscene advertisements and films were received in the Western District of Texas; therefore, venue was perfectly proper in that district. The Government argues, quite correctly, that a defendant has no right to be tried in his or her own home district, and that a trial is proper in any Federal judicial district in which venue may lie. *See United State v. Madrid,* 510 F.2d 554, 555 (5th Cir. 1975), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *United States v. Sanchez,* 508 F.2d 388, 394 (5th Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975).

 Appellant is correct in stating that a test for determining whether error had been made in a lower court's refusal to grant a motion for change of venue (pursuant to Rule 21(b), Fed.R.Crim.Proc.) for the convenience of the parties is a showing that the trial court abused its discretion. *United States v. Thaggard,* 477 F.2d 626 (5th Cir.),

*cert. denied,* 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973). Although appellant alleges that the trial court's denial of her motion was an abuse of discretion, she fails to show in any fashion how the decision was such an abuse, or how she was prejudiced by such a decision. We hold the motion for change of venue was properly denied.

## ENTRAPMENT

Mrs. Walker's fourth point of error is the claim that admissions by Postal Inspectors that they ordered the films in question from unsolicited advertising brochures sent to the Post Office box in Hondo, Texas, established entrapment as a matter of law. For support appellant relies on *United States v. Hampton,* 507 F.2d 832 (8th Cir. 1974), *aff'd,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

 *Hampton,* however, clearly establishes that entrapment may be shown as a matter of law only when "the Government's deception actually implants the criminal design in the mind of the defendant."[2] *Hampton v. United States, supra,* 425 U.S. at 489, 96 S.Ct. at 1649, *quoting from United States v. Russell,* 411 U.S. 423, 436, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Where, as in this case, the Government has presented sufficient evidence to show predisposition by the defendant, the question of entrapment becomes one of fact, properly within the province of the jury.

The facts proven in this case leave great doubt whether the defense of entrapment was proven as a matter of fact; Government agents purchased the films in response to unsolicited (and obscene) advertisements. Nevertheless, the trial judge gave a proper entrapment instruction to the jury which was considered and obviously rejected.

---

2. In *Hampton,* Mr. Justice Powell, concurring in the judgment, noted that "[p]olice overinvolvement in crime" reaching a "demonstrable level of outrageousness" could bar a conviction regardless of the predisposition of the accused. *United States v. Hampton,* 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)

(Powell, J., concurring in the judgment). However, in the case at bar Government involvement does not begin to approach even the levels held not offensive in *Hampton, supra,* and *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

## OBLIGATION TO FURNISH EXCULPATORY MATERIAL

Finally, Mrs. Walker alleges as her last point of error that in connection with the film "Cin-Kay–2," the Government breached its duty under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to seek out and locate the performer in that film so as to ascertain her age. Throughout the trial, appellant argued that although the advertisements in the brochures represented that the female performer in the film was twelve-years-old, she was in fact older.

However, appellant has shown no prejudice to herself resulting from the Government's inability or unwillingness to locate the performer in this particular film to determine her age. While *Brady* requires the Government to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the Government to *seek out* such evidence. *United States v. Beaver,* 524 F.2d 963, 966 (5th Cir. 1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756 (1976); *United States v. Gonzelez,* 466 F.2d 1286, 1288 (5th Cir. 1972). Since the Government had no obligation in this case, it breached no duty and this argument by the appellant also fails.

In summary, we hold that the prosecutor, during final argument, did not improperly comment on defendant's failure to testify during trial, that the trial judge did not abuse his discretion in denying appellant's motion for a continuance, conducting the voir dire examination, or managing the trial, that Mrs. Walker's request for a change of venue was properly denied, that entrapment as a matter of law was not an issue in this case, and that the Government was under no obligation to seek out exculpatory material for the benefit of the defendant.

Accordingly, the conviction is

AFFIRMED.