**UNITED STATES of America, Appellee,**

v.

**Claude Leander RILEY, Appellant.**

**No. 80–1890.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1981.

Decided Sept. 8, 1981.

Rehearing Denied Nov. 6, 1981.

Richard H. Zimmermann (argued), Mears, Zimmermann & Mears, Iowa City, Iowa, for appellant.

Robert L. Teig, Asst. U. S. Atty., Northern District of Iowa, Cedar Rapids, Iowa, for appellee.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Claude Leander Riley appeals from a final judgment entered in the District Court for the Northern District of Iowa upon a jury verdict finding him guilty of two counts of violating the Mann Act, 18 U.S.C. § 2423 (prohibiting the transportation in interstate commerce of a minor for purposes of prostitution).[1] The district court sentenced appellant to ten years imprisonment on each count, to be served concurrently.

For reversal appellant argues that the district court erred in (1) admitting into evidence the out-of-court statements of Ms. Robinson and Ms. Richmond, (2) denying his motion for production of certain medical records, (3) denying his motion for a psychiatric examination of the government's chief witness, Ms. Carol Richmond, (4) refusing to open certain state juvenile records (health report from the Jo Daviess County jail), (5) admitting into evidence testimony about subsequent similar acts, (6) failing to dismiss the indictment on the grounds of preindictment delay, (7) denying his motion for production of the FBI criminal records or rap sheets of the government witnesses, and (8) failing to declare a mistrial following testimony about a polygraph examination. We have carefully reviewed the record in light of appellant's allegations of error and for the reasons discussed below reverse and remand for a new trial.

In late April, 1979, appellant drove from Minneapolis, Minnesota, to Dubuque, Iowa, accompanied by Ms. Velda Robinson, and their infant son, Sean, and two young women, Ms. Carol Richmond, the chief government witness, then aged sixteen, and Ms. LaDonna Stuhr, also aged sixteen. Appellant testified that they had driven to Dubuque hoping to find Ms. Robinson work as a nightclub or bar dancer. The group checked into a motel in Dubuque but traveled to East Dubuque, Illinois, on three

---

1. 18 U.S.C. § 2423(a) provides in part:

 Any person who transports, finances in whole or part the transportation of, or otherwise causes or facilitates the movement of, any minor in interstate or foreign commerce, or within the District of Columbia or any territory or other possession of the United States, with the intent—

 (1) that such minor engage in prostitution;

 · · ·

 · · · ·

 shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

successive evenings. According to the government's theory of the case, the women went from bar to bar, engaged in prostitution, and turned the money over to appellant.

The only fact in dispute at trial was whether or not appellant transported Ms. Richmond, a minor, in interstate commerce with the requisite intent that she engage in prostitution. Ms. Richmond's testimony and her two out-of-court statements supported the government's theory of the case. Ms. Robinson could not be located before trial, but her edited out-of-court statement was admitted into evidence. Ms. Robinson's statement was consistent with those of Ms. Richmond. Appellant testified and admitted driving Ms. Richmond and the others from Minneapolis to Dubuque and into East Dubuque, but vigorously denied encouraging prostitution, transporting anyone for purposes of prostitution, or profiting from any prostitution.

The jury convicted appellant on two of the three Mann Act counts charged in the indictment. This appeal followed.

## I. Out-of-Court Statements

Appellant argues that the district court erred in admitting into evidence the out-of-court statements of Ms. Robinson and Ms. Richmond. Appellant argues the admission of these statements violated the hearsay rule and his right to confrontation and to a fair trial.

### A. Ms. Robinson

Ms. Robinson was unavailable as a witness at trial. The government read into evidence an edited [2] statement made by Ms. Robinson to local law enforcement officers in Illinois shortly after the events charged in the indictment. This statement was consistent with the government's theory of the case and corroborated Ms. Richmond's version of the events. Ms. Robinson's statement, as edited and read to the jury, described the trip to Dubuque and East Dubuque and related that she (Ms. Robinson) and Ms. Richmond engaged in prostitution in East Dubuque. The statement further related that appellant was a member of the group that went to East Dubuque, a fact which appellant admitted. Appellant specifically challenges the admissibility of this statement on the grounds that the statement was hearsay and not against Ms. Robinson's penal interest and that there was no opportunity for cross-examination of the declarant (Ms. Robinson).[3] The government argues the statement was properly

---

**2.** The portions of Ms. Robinson's statement directly implicating appellant were excluded.

**3.** We decide preliminarily that appellant is not foreclosed from challenging on appeal the admissibility of Ms. Robinson's statement. We disagree with the government's argument that appellant waived his objection by not opposing the sending of the edited statement to the jury during deliberations, in response to the jury's request. The government cites *United States v. Davis*, 487 F.2d 112, 121 (5th Cir. 1973) ("Reference to or use by a defendant of an erroneously admitted line of evidence ordinarily cures or waives error."), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). The record indicates that defense counsel agreed to send the edited statement to the jury in order to correct some of the mistakes made during the reading by the government attorney of the statement to the jury during trial and to clear up any confusion which may have been created as a result. Further, the record indicates that the district court was aware that defense coun-

sel understood that the sending of the edited statement to the jury did not waive any prior defense objections to its admissibility. Under these circumstances, appellant did not waive the objection to the admissibility of Ms. Robinson's statement. *See United States v. Hammond*, 605 F.2d 862, 863 (5th Cir. 1979); *United States v. Cruz*, 581 F.2d 535, 542 (5th Cir. 1978) (banc); *United States v. Edmonds*, 173 U.S.App.D.C. 241, 243 n.10, 524 F.2d 62, 64 n.10 (1975); *United States v. Heffner*, 420 F.2d 809, 813–14 (4th Cir. 1969).

We also note that appellant has not waived his objection to the admissibility of Ms. Robinson's statement on the grounds that there was inadequate foundation with respect to whether the statement was against Ms. Robinson's penal interest. *See United States v. Riley*, No. CR–80–1001 (N.D.Iowa Sept. 19, 1980) (order denying motion for new trial) (slip op. at 4). Defense counsel made an objection on this basis which was overruled by the district court. *See* Tr. 133.

admitted under the statement against penal interest exception to the hearsay rule, Fed. R.Evid. 804(b)(3).[4]

The admissibility of collateral inculpatory[5] declarations against penal interest under Fed.R.Evid. 804(b)(3) presents a controversial and complex evidentiary problem. *See United States v. Mock*, 640 F.2d 629 (5th Cir. 1981); *United States v. Palumbo*, 639 F.2d 123 (3d Cir. 1981); *United States v. Winley*, 638 F.2d 560 (2d Cir. 1981); *United States v. Robinson*, 635 F.2d 363 (5th Cir. 1981) (per curiam); *United States v. Lieberman*, 637 F.2d 95 (2d Cir. 1980); *United States v. Sarmiento-Perez*, 633 F.2d 1092 (5th Cir. 1980); *United States v. Oliver*, 626 F.2d 254 (2d Cir. 1980); *United States v. Garris*, 616 F.2d 626 (2d Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980); *United States v. Love*, 592 F.2d 1022 (8th Cir. 1979); *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978); *United States v. Bailey*, 581 F.2d 341 (3d Cir. 1978); *United States v. Lilley*, 581 F.2d 182 (8th Cir. 1978); *United States v. White*, 553 F.2d 310 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977). *See generally* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 804(b)(3) (1977) (hereinafter Weinstein's Evidence); Tague, *Perils of the Rulemaking Process: The De-*

**4.** Fed.R.Evid. 804(b)(3) provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

**5.** Essential to an analysis of the issues involved [in discussing the admissibility of collateral inculpatory declarations against interest] is an understanding of the relevant classifications. An *inculpatory statement* is one which implicates both the declarant and the defendant in criminal activity and is admitted against the defendant. Such statements can be divided into *collateral* and *noncollateral* statements. In a *noncollateral* inculpatory statement, the facts inculpating the defendant are found in the portion of the statement directly against the declarant's interest. In his treatise, District Judge Jack Weinstein presents as an example of such a statement one in which the declarant states that he has stolen goods, with the statement admitted against a defendant charged with possession of stolen goods. Here, the fact that the declarant has stolen the items is disserving to the declarant and inculpates the defendant. Because such statements can arise only where a defendant is accused of certain less common crimes, they do not appear often in the cases.

The more common type of inculpatory statement is the *collateral* inculpatory declaration. Here, the inculpatory material is not found in the portion of the statement directly against the declarant's interest, but appears instead in another portion of the statement. An example of such a statement would be the declarant's assertion that "John and I robbed the bank" admitted in John's trial for bank robbery. In this example the relevant material is not contained in the disserving [or against interest] segment ("I robbed the bank."); instead, it is the collateral portion ("John robbed the bank.").

*Exculpatory statements* are declarations against the declarant's interest which indicate that the defendant is not responsible for the crime charged. These also can be divided into the collateral and noncollateral classifications described above.

Comment, *Federal Rule of Evidence 804(b)(3) & Inculpatory Statements Against Penal Interest*, 66 Calif.L.Rev. 1189, 1190 n.7 (1978) (emphasis in original, citation omitted) (hereinafter Comment), *citing* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 804(b)(3)[03], at 804–96 to 97 (1977) (hereinafter Weinstein's Evidence).

The admissibility of exculpatory statements presents similar evidentiary problems but does not involve the same constitutional issues that inculpatory statements raise. *See, e. g., United States v. Satterfield*, 572 F.2d 687 (9th Cir.), *cert. denied*, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978); *United States v. Barrett*, 539 F.2d 244 (1st Cir. 1976); *United States v. Goodlow*, 500 F.2d 954 (8th Cir. 1974) (proposed rules). *See generally* Tague, *Perils of the Rulemaking Process: The Development, Application, & Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception*, 64 Geo. L.J. 851 (1981) (hereinafter Tague).

*velopment, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception,* 69 Geo.L.J. 851 (1981) (hereinafter Tague); Comment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Calif.L. Rev. 1189 (1978) (hereinafter Comment).

Departing from the common law which required declarations against interest to be against the declarant's pecuniary or proprietary interest, Fed.R.Evid. 804(b)(3) also includes declarations against penal interest. *See* note 4 *supra.* "The circumstantial guaranty of reliability for declarations against interest is the [common sense] [6] assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." Fed.R.Evid. 804(b)(3), Advisory Committee Notes Exception (3). Fed.R. Evid. 804(b)(3) permits the admission of an extrajudicial declaration against the declarant's penal interest if (1) the declarant is unavailable and (2) the statement at the time of its making so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. Further, the rule requires that an *exculpatory* statement offered by the accused is not admissible unless "corroborating circumstances clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3).

"The rule does not refer to a troublesome type of declaration against penal interest [at issue in the present case]: the inculpatory statement against the penal interest of the declarant which also implicates and is sought to be admitted against the defendant." Comment, *supra,* 66 Calif.L.Rev. at 1190 (footnote omitted). Although the legislative history is unclear, Congress probably intended to admit inculpatory statements which satisfy the requirements of the rule and the confrontation clause. *See United States v. Palumbo, supra,* 639 F.2d at 129–30 (Adams, J., concurring) (discussion of legislative history); *United States v. Sarmiento-Perez, supra,* 633 F.2d at 1098 ("[T]he rule clearly contemplates the admission, under appropriate circumstances, of such inculpatory (to a criminally accused) statements against the declarant's penal interest."). *See also* Tague, *supra,* 69 Geo. L.J. at 892–97; Comment, *supra,* 66 Calif.L. Rev. at 1191–98. *But see* Weinstein's Evidence, *supra,* ¶ 804(b)(3)[03], at 804–93.

Several recent cases from this circuit have tested inculpatory declarations under Fed.R.Evid. 804(b)(3) and thus implicitly assumed their admissibility. *See United States v. Goins,* 593 F.2d 88, 91 (8th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979); *United States v. Love, supra,* 592 F.2d at 1024–26; *United States v. Lilley, supra,* 581 F.2d at 187–88; *cf. Witham v. Mabry,* 596 F.2d 293, 296–97 (8th Cir. 1979) (habeas corpus). These cases, however, stop short of a comprehensive analysis, largely because in the individual case the declaration at issue, whether inculpatory (as in *Love* and *Lilley*) or exculpatory (as in *Witham*), was found to have been inadmissible under the rule itself, for example, because the declaration was not in fact against the penal interest of the declarant at the time it was made. The rules discussion in the *Goins* case is very brief and sets forth no general guidelines, other than noting that "the identity of the party to whom the statement was made is only one of several factors under Fed.R.Evid. 804(b)(3)." 593 F.2d at 91.

■ After considering the cases of this circuit and other circuits and the views of

**6.** This underlying assumption may be questionable. *See* Comment, *supra,* at 1209–10. For example, although dying declarations (*see* Fed. R.Evid. 804(b)(2)) are frequently cited as the premier example of a hearsay exception which bears the requisite "indicia of reliability," *Ohio v. Roberts,* 448 U.S. 56, 66 & n.8, 100 S.Ct. 2531, 2539 & n.8, 65 L.Ed.2d 597 (1980), the reliability of dying declarations is psychologically doubtful. *See* Jaffee, *The Constitution & Proof by Dead or Unconfrontable Declarants,* 33 Ark.L.Rev. 227 (1979); Tague, *supra,* at 994 & n.741.

commentators, we approve in general the three-pronged test for admissibility of inculpatory declarations against interest developed in *United States v. Alvarez, supra,* 584 F.2d at 701. Thus, we hold that before an inculpatory statement against penal interest is admissible under Rule 804(b)(3), it must be shown that (1) the declarant is unavailable as a witness, (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement.[7] *Accord, United States v. Palumbo, supra,* 639 F.2d at 131 (Adams, J., concurring); *United States v. Sarmiento-Perez, supra,* 633 F.2d at 1101; *United States v. Oliver, supra,* 626 F.2d at 260; *cf. United States v. Goins, supra,* 593 F.2d at 92 (the context of inculpatory declarations, identity of persons spoken to by declarant, and other corroborating evidence constitute "clear indicia of reliability" required by confrontation clause analysis).

See also 4 D. Louisell & C. Mueller, Federal Evidence § 489, at 1180 (1980); Tague, *supra,* 69 Geo.L.J. at 996; Comment, *supra,* 66 Calif.L.Rev. at 1216 (advocating a "strict scrutiny" plus corroboration test of admissibility).

In the present case the first criterion of the test has been met: the declarant, Ms. Robinson, was an unavailable witness as defined in Fed.R.Evid. 804(a)(5)[8] and neither the government,[9] as the proponent of her statement, nor appellant was responsible for her absence.

■ We now discuss whether the second criterion has been satisfied. "[T]he 'against interest' exception is not limited to a declarant's direct confession of criminal guilt, but applies as well to statements that 'tend' to subject the speaker to criminal liability." *United States v. Palumbo, supra,* 639 F.2d at 132 (Adams, J., concurring) (footnote omitted), *citing United States v. Alvarez, supra,* 584 F.2d at 699; *accord, United States v. Satterfield,* 572 F.2d 687, 691 (9th

**7.** The test developed in *Alvarez* judicially reads the corroboration expressly required by the rule itself for *exculpatory* statements into the rule as applied to *inculpatory* statements, in order to provide the "indicia of reliability" and "guarantees of trustworthiness" required by the confrontation clause. 584 F.2d at 701; *see United States v. Palumbo, supra,* 639 F.2d at 131 & n.5 (Adams, J., concurring); *United States v. Sarmiento-Perez, supra,* 633 F.2d at 1099–01. As noted in *Alvarez,* requiring corroboration of inculpatory statements against penal interest provides a single standard for both inculpatory and exculpatory statements. 584 F.2d at 701; *see also* Tague, *supra,* 69 Geo.L.J. at 996; Comment, *supra,* 66 Calif.L.Rev. at 1216 & n.155.

We note that "[a] demonstration of unavailability, however, is not always required. In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness." *Ohio v. Roberts, supra,* 448 U.S. at 65 n.7, 100 S.Ct. at 2538 n.7; *see also* note 9 *infra.*

**8.** Fed.R.Evid. 804(a)(5) provides:

(a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant—

. . . .

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

**9.** Although the extent and nature of the government's efforts to locate Ms. Robinson as a witness do not appear in the record, the government attorney informed the district court that both parties had looked unsuccessfully for Ms. Robinson. We conclude that Ms. Robinson was an unavailable witness "in the constitutional sense." *Ohio v. Roberts, supra,* 448 U.S. at 74, 100 S.Ct. at 2543, *citing Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968) ("[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his [or her] presence at trial."). *But cf. Ohio v. Roberts, supra,* 448 U.S. at 79, 100 S.Ct. at 2546 (Brennan, J., dissenting) ("[T]he government must show that it has engaged in a diligent effort to locate and procure the witness' return.").

Cir. 1978); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978) (circumstance that exculpatory extrajudicial statement would have probative value in trial against declarant is indicative of reliability); *United States v. Barrett*, 539 F.2d 244, 251 (1st Cir. 1976). Here, the declarant clearly and directly implicated herself in criminal conduct by admitting her prostitution activity, "a particular crime for which prosecution was possible at the time [she made the statement]." *United States v. Dovico*, 380 F.2d 325, 327 (2d Cir.), *cert. denied*, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967), *cited with approval in United States v. Love, supra*, 592 F.2d at 1025; *cf. United States v. Sarmiento-Perez, supra*, 633 F.2d at 1101 (inculpatory statements should clearly and directly implicate declarant in criminal conduct).

However, further scrutiny is necessary and particularly because Ms. Robinson's statement inculpates a third party. Depending upon the circumstances in which it is made, a particular statement which is ostensibly disserving may in fact be either neutral or self-serving. Such a statement would not be a statement against interest. In particular, "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Fed.R.Evid. 804(b)(3), Advisory Committee Notes Exception (3). *See United States v. Love, supra*, 592 F.2d at 1025. A close examination of the circumstances surrounding a custodial statement is necessary in order to determine whether the declarant had "a strong incentive to speak, whether it be truthfully or falsely," *id.* at 1026. The question is whether the declarant was motivated by

> the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, . . . [or] the desire for revenge. . . . [and thus] might well have been motivated to misrepresent the role of others in the criminal enterprise, and might well

have viewed the statement as a whole—including the ostensibly disserving portions—to be *in* his [or her] interest rather than against it.

*United States v. Sarmiento-Perez, supra*, 633 F.2d at 1102 (emphasis in original); *see also United States v. Love, supra*, 592 F.2d at 1025–26; *United States v. Lilley, supra*, 581 F.2d at 184–88.

Here, Ms. Robinson's statement was made while she was "in custody" and in response to police questioning, although she was not formally charged at that time and was therefore not engaged in any plea bargaining. There is no indication in the record that any promises or threats had been made to her in order to induce her to make the statement. She was given *Miranda* warnings and thus reasonably should have been aware of the possible adverse consequences of her statement. The statement was tape recorded with her knowledge and subsequently transcribed. Ms. Robinson admitted working as a prostitute and that she had once been arrested for shoplifting. She was subject to possible state prosecution for prostitution at the time she made the statement. However, she had also been told that a prostitution conviction could jeopardize the custody of her child. Thus, as in *United States v. Love*, Ms. Robinson may well have believed that it was in her best interest to make a statement implicating appellant in order to ingratiate herself with the authorities and divert attention to another. 592 F.2d at 1026. Moreover, prostitution, the crime to which Ms. Robinson confessed, is much less serious than violation of the Mann Act, the crime in which she has implicated appellant. In addition, Ms. Robinson's unedited statement suggests that, despite her relationship with appellant, she was physically afraid of appellant (who was in custody at the time she made the statement) and wanted to leave him and thus may have been motivated to misrepresent the circumstances, the parties' relationship, and in particular appellant's role in the events in question.[10]

---

10. *But see United States v. White, supra*, 553 F.2d at 314. We distinguish *United States v.*

*Garris, supra*, 616 F.2d at 632–33. In *Garris* the declarant was "only fictively an 'unavaila-

■ In sum, we are not convinced that Ms. Robinson's statement,[11] although ostensibly against interest, was in fact against her interest under all the surrounding circumstances at the time it was made.

From what has been said it follows also that Ms. Robinson's statement does not meet the third criterion of the admissibility test because corroborating circumstances do not clearly indicate the trustworthiness of the statement.[12] And we so hold even though the statement may be true and was corroborated to some extent by other evidence in the record.

Nor can we agree that admission of the statement was harmless error. Although it is true that Ms. Robinson's statement placed no new evidence before the jury, the statement did corroborate the statements made by Ms. Richmond and thus served to bolster Ms. Richmond's credibility as a witness. While the government's evidence of guilt was substantial, we cannot characterize the admission of Ms. Robinson's statement as harmless beyond a reasonable doubt. Therefore, we reverse and remand for a new trial. We discuss briefly appellant's other allegations of error.

### B. Ms. Richmond

■ Ms. Richmond, the victim in the government's case, did testify at trial. At trial, however, she was unable to remember many of the details and the government introduced into evidence two out-of-court statements made by Ms. Richmond immediately after the events at issue. One statement was a taped interview with a law enforcement officer, recorded on April 27, 1979. The tape was played to the jury, which had been given transcripts of the tape to read while the tape was played. The district court cautioned the jury to use the transcripts as an aid only and to resolve any discrepancies between the tape and the transcript according to the tape. The other statement was a written statement which had been prepared by an FBI agent and then read and signed by Ms. Richmond. This second statement was read to the jury by the government attorney.

Appellant argues that the district court erred in admitting the two statements because the statements were not trustworthy and were highly prejudicial. The government argues that the statements were admissible under Fed.R.Evid. 803(5)[13] as recorded recollections.

ble' witness, for in fact she appeared before the jury and was cross-examined," thus foreclosing any confrontation clause problem. *Id.* at 633 & n.16. Moreover, the declarant in *Garris* testified outside the presence of the jury and convinced the district judge that she had no desire to curry favor with the authorities by inculpating the accused, even though she was in custody at the time and made the statement in response to questioning by the FBI.

11. "We do not reach the issue of whether under Rule 804(b)(3) the portion of a statement against penal interest must always be separated from the portion implicating a criminal defendant with the latter excluded." *United States v. Love, supra*, 592 F.2d at 1026, *citing United States v. White, supra*, 553 F.2d at 314 (portions of statement directly incriminating defendant were edited); *see also United States v. Lilley, supra*, 581 F.2d at 188.

12. In my opinion, assuming the first and second criteria have been met, an *inculpatory* statement not corroborated by other evidence in the record should be excluded. *See United States v. Palumbo*, 639 F.2d 123, 133 (3d Cir.

1981) (Adams, J., concurring). The standard of corroboration required for *exculpatory* statements arguably should be lower. *See* Tague, *supra*, 69 Geo.L.J. at 946–70; *but cf.* Comment, *supra*, 66 Calif.L.Rev. at 1216 (identical treatment of inculpatory and exculpatory statements, although concedes standard is unclear).

13. Fed.R.Evid. 803(5) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

We conclude that the two statements satisfied the requirements of Fed.R.Evid. 803(5) as recorded recollections. *See United States v. Williams*, 571 F.2d 344, 348–50 (6th Cir.), *cert. denied*, 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978); *cf. United States v. Senak*, 527 F.2d 129, 136–42 (7th Cir. 1975) (pre-Rules case), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976); *Goings v. United States*, 377 F.2d 753, 760 n.8 (8th Cir. 1967) (witness must acknowledge document as accurate, document should be prepared contemporaneously with the events). *See also* 4 D. Louisell & C. Mueller, Federal Evidence, *supra*, § 445. The record indicates that Ms. Richmond had no present memory or knowledge of the matter recorded; she simply no longer remembered. Ms. Richmond testified that she had no clear present memory of the events in question, even after listening to the tape and reviewing the written statement. She stated that she remembered talking to the law enforcement officers, taping the interview, talking with the FBI agent, reading the written statement in part ("looking it over"), and signing it. She further testified that, at the time of the interviews, she remembered what had happened. The interview and the written statement were both prepared on April 27, 1979, the morning after she sought the assistance of the police and very soon after the events in question. Ms. Richmond did not repudiate either statement.

■ Appellant also argues that the admission of recorded recollections under Fed. R.Evid. 803(5) violated the confrontation clause. Here, Ms. Richmond was a witness at trial and subject to cross-examination, although the effectiveness of such cross-examination was somewhat limited because of her lack of present memory about the events described in the statements. We find no confrontation clause violation. *See, e. g., United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976). *Cf. United States v. Rogers*, 549 F.2d 490, 500–02 (8th Cir. 1976) (prior inconsistent statements), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977).

## II. *Medical Records*

■ Appellant next argues that the district court erred in denying his motion for production of certain medical records. There was evidence in the record that Ms. Richmond was a behavior problem, had received psychological counseling, abused alcohol and various drugs, and, shortly before the events charged in the indictment, had been hospitalized in Minnesota, apparently as a psychiatric in-patient. Appellant sought production of these medical records as materials relevant to Ms. Richmond's mental state, her ability to perceive, and her credibility. Appellant concedes that these records were not in the possession or control of the government but argues that a criminal defendant should have access to exculpatory materials regardless of their location, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ We disagree. "While *Brady* requires the Government to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the Government to *seek out* such evidence." *United States v. Walker*, 559 F.2d 365, 373 (5th Cir. 1977) (citations omitted, emphasis in original). Further, there is no indication in the record that appellant subpoenaed these records. "[T]he rights protected under *Brady* . . . are not violated when a defendant in a criminal trial has full knowledge of the existence of the evidence [not in the possession or control of the government] prior to trial and makes no effort to obtain its production." *Maglaya v. Buchkoe*, 515 F.2d 265, 268 (6th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975).[14]

■ Appellant also argues that the denial of his motion for production of medical

---

14. *But cf. Maglaya v. Buchkoe*, 515 F.2d 265, 270–72 (6th Cir.) (McCree, J., dissenting) (failure to request production of witness' medical reports and to procure testimony of witness' examining psychiatrist as relevant to claim of ineffective assistance of counsel), *cert. denied*, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975).

records impaired his ability to effectively cross-examine Ms. Richmond and to impeach her credibility as a witness, thus violating the confrontation clause of the sixth amendment. We disagree and distinguish *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Here, appellant was not restricted in cross-examination and was able to put before the jury Ms. Richmond's psychological and behavior problems, drug and alcohol abuse, hospitalization, lack of memory, inconsistent testimony, and racial bias.

## III. *Psychiatric Examination*

Appellant next argues that the district court erred in denying his motion for a psychiatric examination of Ms. Richmond. Appellant argues this denial impaired his ability to effectively cross-examine Ms. Richmond and to present an adequate defense. Appellant's defense theory was based on Ms. Richmond's unstable mental condition.

■■■■■ "[T]he decision to order [a psychiatric] examination [of the complainant-witness] is 'entrusted to the sound discretion of the trial judge in light of the particular facts.'" *Government of the Virgin Islands v. Scuito*, 623 F.2d 869, 875 (3d Cir. 1980), *citing United States v. Benn*, 155 U.S.App.D.C. 180, 476 F.2d 1127, 1131 (1972); *see United States v. Russo*, 442 F.2d 498, 502 (2d Cir. 1971), *cert. denied*, 404 U.S. 1023, 92 S.Ct. 669, 30 L.Ed.2d 673 (1972). *See also* 3 Weinstein's Evidence, *supra*, ¶ 607[04], at 607-44, 45 & n.39. "Ordering a witness to undergo a psychological examination is a drastic measure." *United States v. Russo, supra*, 442 F.2d at 503. Under the present circumstances, where the only showing of need for a psychiatric examination was based upon defense counsel's affidavit describing Ms. Richmond as a "pathological liar" and her history of drug and alcohol abuse, we find no abuse of discretion in the district court's denial of a psychiatric examination. Appellant's showing of need for such an examination was insufficient.[15]

Moreover, we do not think that the denial of a psychiatric examination prejudiced appellant's defense because Ms. Richmond was thoroughly cross-examined about her behavior problems and drug and alcohol abuse. Cf. *United States v. Stout*, 599 F.2d 866, 869 (8th Cir.) (per curiam) (denial of untimely motion for psychiatric examination not abuse of discretion; no prejudice where witness' mental problems and drug addiction before the jury), *cert. denied*, 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979). The government's witnesses in a criminal case are frequently not model citizens; however, "[a]s long as the jury from its observation has the opportunity to appraise the credibility of the witness in the light of the facts impugning his [or her] veracity, this constitutes the constitutional safeguard of a defendant's rights." *United States v. Russo, supra*, 442 F.2d at 502.

Appellant also argues that the district court erred in excluding expert psychiatric testimony about Ms. Richmond's mental condition and her capacity for telling the truth. Appellant wanted the psychiatrist to answer certain hypothetical questions on the basis of in-court observation of Ms. Richmond. We find no error in the district court's refusal to admit this kind of expert testimony. *See United States v. Daileda*, 229 F.Supp. 148, 153–54 (M.D.Pa.1964), *aff'd*, 342 F.2d 218 (3d Cir.) (per curiam) (doubtful that a medical witness can give a legally acceptable expert opinion on the mental condition of a witness merely by observing the witness testify in court), *cert. denied*, 382 U.S. 815, 86 S.Ct. 35, 15 L.Ed.2d 63 (1965).

## IV. *Jail Records*

■■■ Appellant next argues that the district court erred in refusing to open certain state juvenile records. At trial Ms. Richmond testified that she drank alcohol and had used speed but not LSD; she also denied experiencing blackouts. From commu-

---

**15.** We note that Ms. Richmond's testimony and her out-of-court statements were partially cor-

roborated by the testimony of several other government witnesses.

nications with the sheriff of the jail in Jo Daviess County, Illinois, where Ms. Richmond had been detained, defense counsel believed that Ms. Richmond, while in jail, had admitted using LSD and experiencing blackouts to a public health nurse. Defense counsel subpoenaed the records from the jail. These records, however, had been sealed under Illinois law, Ill.Rev.Stat. ch. 37, § 702–8(3) (1973), as juvenile court records. The district court refused to open the records and initially refused to open the file for *in camera* inspection. The district court later decided to inspect the file *in camera*, but by that time the custodian had left the courthouse. Defense counsel and the marshals were unable to locate the custodian. Appellant argues that the records could have impeached Ms. Richmond's ability to perceive and her credibility.

Under the circumstances it is impossible to determine the relevance or materiality of the county jail records. Neither the district court, the government attorney, nor defense counsel had examined the records. Assuming for the purposes of argument that the records would have impeached Ms. Richmond's testimony about using LSD and experiencing blackouts and were otherwise admissible, we think the district court's failure to examine them and admit them into evidence was harmless error. Ms. Richmond's own testimony about drug and alcohol abuse and her other problems was already before the jury.

## V. Subsequent Similar Acts

■ Appellant next argues the district court erred in admitting evidence of subsequent similar acts under Fed.R.Evid. 404(b).[16] Two government witnesses, Mr. Willie Spencer and Ms. Theresa Bloodsaw, testified that appellant and Ms. Robinson were involved in similar prostitution activities in Mobile, Alabama, in the fall of 1979, some six months after the events charged in the indictment. Appellant argues that

events which occurred subsequent to the conduct at issue have little probative value and that the testimony was highly prejudicial.

We find appellant's argument without merit. "[T]he mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive . . . ." *McConkey v. United States*, 444 F.2d 788, 790 (8th Cir.) (per curiam), *cert. denied*, 404 U.S. 885, 92 S.Ct. 223, 30 L.Ed.2d 168 (1971). Further, although the challenged evidence was indeed prejudicial to appellant, we cannot say that the district court abused its discretion in concluding that its probative value outweighed its prejudicial impact. *E. g., United States v. Robbins*, 613 F.2d 688, 693–94 (8th Cir. 1979); *United States v. Maestas*, 554 F.2d 834, 836 (8th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977).

## VI. Preindictment Delay

■ Appellant next argues the district court erred in failing to dismiss the indictment for preindictment delay. The grand jury did not indict appellant until March, 1980, some eleven months after the occurrence of the crimes charged. Appellant asserts prejudice in the inability to locate two possible defense witnesses, Ms. Robinson and Ms. Stuhr, the second young woman.

We find appellant's argument without merit. The period of preindictment delay here, although relatively short, merited consideration by the district court. It is questionable, however, whether the prejudice asserted by appellant, the unavailability of the two defense witnesses, constitutes actual prejudice for preindictment delay purposes. The possible loss of witnesses, like the dimming of witnesses' memories, attends every delay. Even assuming for the purposes of argument that appellant's allegation of prejudice was sufficient, prejudice

---

16. Fed.R.Evid. 404(b) provides:

 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

alone will not justify dismissal of the indictment. *See United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). Appellant failed to show that the delay was intentional or undertaken in order to gain a tactical advantage. *Cf. United States v. Hood*, 593 F.2d 293, 296 (8th Cir. 1979) (investigative delay); *United States v. Matlock*, 558 F.2d 1328, 1330 (8th Cir.) (investigative delay), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977).

## VII. *Rap Sheets*

■ Appellant next argues the district court erred in denying his motion for production of the FBI criminal records or rap sheets of government witnesses Carol Richmond, Velda Robinson, Willie Spencer, and Theresa Bloodsaw. Appellant argues that the rap sheets were relevant to the credibility of the witnesses, could have affected the jury's verdict, and should have been produced as *Brady* materials. The government argues that appellant's motion for production was untimely, that these rap sheets were not in the control or possession of the government, that rap sheets are not *Brady* materials, and that any criminal background information the government had was orally disclosed to defense counsel.

First, to the extent that appellant argues the rap sheets are generally discoverable pursuant to Fed.R.Crim.P. 16, "[t]his contention is without merit since this court has ruled that the criminal records of [government] witnesses are not discoverable." *United States v. Taylor*, 542 F.2d 1023, 1026 (8th Cir. 1976) (per curiam) (criminal record

of government witness was fully discussed on both direct and cross-examination at trial), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977), *citing Hemphill v. United States*, 392 F.2d 45, 48 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968); *see also United States v. Rogers, supra*, 549 F.2d at 494.

Further, assuming that the government must disclose under *Brady* information in its possession which may bear upon the credibility of a government witness,[17] we are convinced that under the circumstances of the present case the government did not suppress any information. *Cf. United States v. Taylor, supra*, 542 F.2d at 1026 n.3 (case involved discovery under Fed.R. Crim.P. 16; court further noted that under subsidiary, yet related, issue of whether belated government disclosure raised *Brady* question, that under facts there was no suppression of exculpatory evidence). It appears from the record that the only government witness who had a rap sheet was Willie Spencer. At the time of trial the government did not have Mr. Spencer's rap sheet.[18] The government attorney orally disclosed to defense counsel that Mr. Spencer had an extensive criminal record. At trial defense counsel asked Mr. Spencer whether he had ever been convicted of a felony, to which Mr. Spencer truthfully answered in the affirmative. Mr. Spencer also testified, under cross-examination by defense counsel, that he had been in prison, that he had not made any deals with the government in exchange for his testimony, and that he was not presently charged with any crime.

---

**17.** The Fifth Circuit has discussed whether criminal records sought for impeachment purposes are *Brady* materials:

[W]hen *Brady* is invoked to obtain information not favorable on the issue of guilt or innocence but useful for attacking the credibility of a prosecution witness, the information withheld must have a definite impact on the credibility of an important prosecution witness in order for the nondisclosure to require reversal.

*United States v. Crockett*, 534 F.2d 589, 601 (5th Cir. 1976); *accord, United States v. Miller*, 499 F.2d 736, 744 (10th Cir. 1974) (failure to

produce must be inherently significant and favorable to the defense). *Cf. United States v. Taylor*, 542 F.2d 1023, 1026 n.3 (8th Cir. 1976) (per curiam) (under facts of the case, no suppression of exculpatory evidence and thus no need to express any view on the merits), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).

**18.** The government requested it and obtained a copy after trial. The government continues to oppose disclosure of the rap sheet, arguing that rap sheets are not *Brady* materials.

The other government witnesses (Ms. Richmond, Ms. Robinson, Ms. Bloodsaw) did not have FBI criminal records. These witnesses may have had state criminal records;[19] these records, if any, were not in the possession or control of the government.

## VIII. *Polygraph Examination*

 Appellant finally argues that the district court erred in failing to declare a mistrial after certain testimony about a polygraph examination. Ms. Richmond's taped out-of-court statement, as played to the jury, included the following exchange:

Det. Trost: If I would ask you to take a polygraph, do you know what a polygraph is?

Richmond: No.

Det. Trost: It is a lie detector test. If I ask you to take a lie detector test, would you take it stating what you told is the truth?

Richmond: Yes, I would.

Appellant argues that defense counsel had agreed with the government attorney that the government would approach the bench before submitting any polygraph evidence and therefore, defense counsel was unfairly surprised by the portion of the tape which included the reference to a polygraph examination. Appellant argues that this reference to a polygraph examination raised an inference in the minds of the jury that Ms. Richmond in fact took and passed a polygraph examination and thus unfairly bolstered her credibility.

We find no basis for reversal on this ground. Appellant made no motion to strike this reference or request a cautionary instruction. Further, this reference did not raise an inference that Ms. Richmond successfully passed a lie detector test,[20] but only that she was willing to take such a test.

Accordingly, the judgment of the district court is reversed and remanded for a new trial.

ROSS, Circuit Judge, dissenting.

I would affirm the conviction of Mr. Riley. In my opinion the statement in question was clearly against the penal interest of the missing witness and was sufficiently corroborated by other evidence to supply the necessary indicia of reliability. I believe *United States v. Alvarez, supra,* was incorrectly decided and requires more than was contemplated when Federal Rule 804(b)(3) was adopted.

---

**19.** Appellant argues that Ms. Richmond had a state juvenile record for theft and that this fact was crucial to her credibility. However, we note that Ms. Richmond was a juvenile, that a prior conviction of theft is not necessarily automatically admissible as impeaching evidence under Fed.R.Evid. 609(a)(2), *see United States v. Seamster,* 568 F.2d 188, 191 (10th Cir. 1978), and that Ms. Richmond's credibility as a witness had been effectively impeached by cross-examination about her psychological problems and history of drug and alcohol abuse.

**20.** The designated record on appeal contains a report from a polygraph examiner indicating that Ms. Richmond in fact took and "passed" a lie detector test administered on April 27, 1979.